# EXHIBIT 23

EXPERT REPORT OF DR. JILL LEVENSON, PH.D

<u>**Mary Doe,** *et al.***, v. Richard Snyder,** *et al.*</u>

**EXPERT REPORT/DECLARATION OF JILL LEVENSON, Ph.D.**

I, Jill S. Levenson, Ph.D.,state under penalty of perjury as follows:

**1. Background and Education**

I am an associate professor at Lynn University, College of Liberal Education, Department of Psychology, in Boca Raton, Florida. I earned my Doctorate Degree in Social Welfare at Florida International University in Miami (2003). I earned my Masters Degree in Social Work at the University of Maryland, School of Social Work in Baltimore (1987). I earned my Bachelor of Arts Degree in Sociology at the University of Pittsburgh (1985).

I am the author of over 80 articles, publications, and presentations in the area of sex offender recidivism, treatment, and policies regulating sex offenders. In addition to my academic work, I maintain a clinical practice as a licensed clinical social worker evaluating and treating sex offenders. I began my career as a child protection social worker, and have extensive experience working with both victims of sexual violence and sexual offenders. I have qualified to testify as an expert in at least 12 judicial proceedings involving sex offenders. I have testified by invitation before four state legislatures concerning sex offender legislation. I am currently engaged in several research projects funded by the National Institute of Justice regarding sex offender registration, and also serve on the editorial board of "Sexual Abuse: Journal of Research and Treatment." My *curriculum vitae*, including a list of my published work, is attached as Exhibit A.

**2. The Michigan Registry**

As of June 2011, the National Center for Missing and Exploited Children reported a total of 739,853 registered sex offenders (RSOs) across the 50 states, the District of Columbia, and six U.S. territories. Of this total, approximately 42% (308,388) came from five states: California (106,216), Texas (66,587), Florida (55,999), Michigan (47,329), and New York (32,257). (California removes from its total those offenders who are incarcerated, deported, or have moved to another state.) Michigan is, therefore, the fourth largest state registry in the U.S.

**3. Overview of Sex Offender Registration and Notification (SORN) Policies**

**A.    History of SORN Laws**

Federal SORN policies began in 1994 with the passage of the Jacob Wetterling Act, which required all 50 states to create procedures for tracking the addresses of convicted sex offenders. These registries were initially intended for law enforcement purposes to assist with the identification and apprehension of suspects. In 1996, the Wetterling Act was amended to include "Megan's Law," allowing states to disclose registry information to the public. In 2006, the Adam

Walsh Act (AWA) was passed, again revising federal guidelines and requiring states to comply with new standards for the frequency and duration of registration for sex offenders based on a tiering system tied to the offense of conviction. In 2011, Michigan became one of just 16 states compliant with federal AWA guidelines.  As of today, the majority of states have not complied due to concerns about the costs and efficiency of federal requirements.

**B. Offense-based versus Risk-based Classification Schemes**

Though federal guidelines exist, registry laws are administered by individual states. Some states include all individuals convicted of a sex crime on their public registries, and some disclose information only about those who appear to be high risk. Some states classify risk based strictly on the conviction. Statutorily-based sex offender designations cover a wide and diverse spectrum of behavior patterns, and may obscure important distinctions that affect a given offender's public safety risk. Other jurisdictions have adopted more refined approaches (*e.g.*, using empirically-derived risk assessment methods) to assist in distinguishing the most dangerous offenders and creating restrictions and monitoring consistent with an offender's assessed threat to the community.

Empirically validated risk assessment stands in stark contrast to the offense-based classification system required by the Adam Walsh Act. Whereas actuarial assessment procedures evaluate research-based risk factors and screen offenders into relative risk categories, offense-based schemes like the AWA (used in Michigan) classify offenders based only on the purported severity of the offense. Offense-based categories inflate risk in many cases, but will also underestimate the risk of offenders who pled down to lesser offenses. **The result of offense-based categories is that the public's and law enforcement's ability to identify sexually dangerous persons is significantly diluted.**

Recent studies show that the federally-mandated system of classification – based on the categories of offenses listed in the Adam Walsh Act (AWA) – fail to distinguish between registered offenders who present significant threats to public safety and those who present lower risk. For instance, in New York, AWA tiers did a poor job of identifying sexual recidivists. In fact, lower-tiered individuals had higher recidivism rates than those who were assigned into ostensibly higher-risk tiers. Empirically-derived risk factors, in contrast, were better able to predict recidivism than were the AWA "tiered" categories of offenses. (Freeman & Sandler, 2009.) In Florida, AWA Tier 3 offenders had lower recidivism rates and lower actuarial risk assessment scores than Tier 2 offenders (report in progress).

Research has also suggested a potential "net-widening" effect of implementing the AWA-mandated classification system, which places a significant majority of registrants into the highest category of offenders, contradicting evidence suggesting that the highest risk of sexual re-offense is concentrated among a much smaller group of offenders. (A. J. Harris, Lobanov-Rostovsky, & Levenson, 2010.)

**C. Impact of SORN on Sex Offense Recidivism**

At this time, several empirical studies have been conducted on the efficacy of SORN laws and policies. These include five group comparison studies (Adkins, Huff, & Stageberg, 2000; Duwe & Donnay, 2008; Schram & Milloy, 1995; Zevitz, 2006; Zgoba, Witt, Dalessandro, & Veysey, 2009) and six trend analysis studies (Letourneau, Levenson, Bandyopadhyay, Sinha, & Armstrong, in press; Prescott & Rockoff, 2008; Sandler, Freeman, & Socia, 2008; Vasquez, Maddan, & Walker, 2008; Veysey, Zgoba, & Dalessandro, 2009; Washington State Institute for Public Policy, 2005). These studies have examined the impact of SORN laws on general sex crime rates and/or sex offense recidivism.

The relative scarcity of empirical research is partly due to the recent implementation of these laws and partly due to methodological challenges faced by researchers when conducting sex crime policy analysis. For example, low base rates, the multiple criminal justice policies enacted within short time frames, challenges obtaining reliable recidivism data, and the need for long follow-up periods all contribute to the complexity of understanding the impact of these laws. Furthermore, each state's SORN policy is idiosyncratic, subjecting different types of offenders to a variety of registration and notification requirements. The variability in research methodologies and SORN policy characteristics likely accounts for the varied results reported across the studies.

One thing is clear, however: **Most studies reveal no significant reductions in sex crime rates that can be attributed to SORN laws and policies. The two studies that have detected reductions in sex crime recidivism as a result of SORN were conducted in Minnesota and Washington (Duwe & Donnay, 2008; Washington State Institute for Public Policy, 2005); both states use risk assessment instruments to classify offenders, and they limit public notification only to those who pose the greatest threat to community safety.  An analysis examining over 300,000 sex offenses in 15 states found that while registration with law enforcement appeared to reduce recidivistic sex offenses, public notification did not. (Prescott & Rockoff, 2011.)**

**D. Residence Restrictions**

Sex offender registration often triggers additional requirements related to housing. Residential restriction laws prohibit sex offenders from living near places where children are likely to be found. Some 30 states have laws designating where sex offenders can live. (Meloy, Miller, & Curtis, 2007.) Too abundant to count are municipal housing ordinances passed by cities, towns, and counties. The most common proximity zones are 1,000 to 2,000 feet from venues such as schools, parks, playgrounds, and daycare centers. Some laws include other facilities such as arcades, amusement parks, movie theaters, youth sports facilities, school bus stops, and libraries. (Meloy, Miller, & Curtis, 2008.)

Residence restrictions are based on the seemingly logical premise that by requiring child molesters to live far from places where children congregate, repeat sex crimes can be prevented. The first problem, however, is that most SORN provisions apply to all sex offenders, without regard to whether or not the offender poses a danger to children. Moreover, the best current research finds no support for the hypothesis that sex offenders who live closer to child-oriented settings are more likely to reoffend.

**In fact, the empirical research indicates that where sex offenders live is not a significant contributing factor to reoffending behavior.** Zandbergen, Levenson and Hart (2010) compared the residential proximity of sexual recidivists and non-recidivists to schools and daycares in Florida. Those who lived within 1,000, 1,500, or 2,500 feet of schools or daycare centers did not reoffend more frequently than those who lived farther away. There was no significant correlation between sexual recidivism and the number of feet the offender lived from a school. The two groups were matched on relevant risk factors (prior arrests, age, marital status, predator status). **The authors of the study concluded that proximity measures were not significant predictors of recidivism.**

Similarly, in Colorado, the addresses of sex offender recidivists and non-recidivists were found to be distributed randomly throughout the geographical area, with no evidence that recidivists lived closer to schools and daycare centers. (Colorado Department of Public Safety, 2004.)

In Jacksonville, Florida, researchers investigated the effects of a 2,500 foot residence restriction ordinance and found no reduction in sex crime rates and sex offense recidivism over time. (Nobles, Levenson, & Youstin, in press.) The Iowa Department of Criminal and Juvenile Justice Planning studied the effect of Iowa's 2,000 foot residence restrictions law that went into effect in August of 2005 and did not observe a downward trend in the number of sexual charges over time following the passage of the law. (Blood, Watson, & Stageberg, 2008.) **In fact, sex crime arrests increased steadily each year** (with 913 charges filed during the year prior to implementation, 928 charges filed the subsequent year, and 1,095 the year after that.) **The authors concluded that Iowa's residence law "does not seem to have led to fewer charges or convictions, indicating that there probably have not been fewer child victims."** (Blood, *et al.*, 2008, p. 10.)

**In Minnesota, an analysis of 224 repeat sex offenders led the authors to conclude that residential restriction laws would not have prevented even one re-offense.** (Duwe, Donnay, & Tewksbury, 2008.) Most of the cases involving children were committed not by strangers but by registered sex offenders who were well acquainted with their victims, such as parents, caretakers, paramours of the mother, babysitters, or friends of the family. The repeat offender was a neighbor of the victim in only about four percent of the cases. **Predatory assaults that occurred within a mile of the offender's residence typically involved adult victims.** Although some of the offenders established relationships with minor victims within 2,500 feet of their homes, none of the crimes took place in or near a school, daycare center, or park. **Current**

4

**research shows that sex offenders do not appear to abuse children because they live near schools, but rather they take advantage of opportunities to cultivate relationships with children and their families in order for sexual abuse to take place.** (Duwe, *et al.*, 2008.)

Similarly, the majority (67%) of New Jersey offenders met victims in private locations while relatively few (4.4%) met victims in the types of locations designated as off-limits by residential restriction laws. (Colombino, Mercado, Levenson, & Jeglic, 2011.) **Noteworthy is that sex offenders rarely encountered their victims in public locations where children congregate, and therefore policies emphasizing residential proximity to schools, parks, and other "child-friendly" locations ignore the empirical reality of sexual abuse patterns.**

Residential restrictions also create barriers to offender reintegration into society. As restricted zones increase, so do transience, homelessness, and reduced employment opportunities for offenders. (Levenson, 2008.) Many sex offenders reported that housing restriction laws forced them to relocate; that they were unable to return to their homes after incarceration; that they were not permitted to live with family members; or that they experienced a landlord refusing to rent to them or to renew a lease. (Levenson, 2008; Levenson & Cotter, 2005a; Levenson & Hern, 2007; Mercado, Alvarez, & Levenson, 2008.) Many indicated that affordable housing is less available due to limits on where they can live, and that they are forced to live farther away from employment, public transportation, social services, and mental health treatment. Young adults seemed to be especially affected by these laws: age was significantly inversely correlated with being unable to live with family and having difficulties securing affordable housing. (Levenson, 2008; Levenson & Hern, 2007.) Family members of registered sex offenders also reported that residential restriction laws created housing disruption for them; larger restricted zones led to an increased chance of a housing crisis. (Levenson & Tewksbury, 2009.)

A growing body of evidence illustrates how residential restrictions profoundly reduce housing options for sex offenders. In Orlando, Florida, a study found that 99 percent of all residential dwellings are located within 2,500 feet of schools, parks, daycare centers, or school bus stops. (Zandbergen & Hart, 2006.) The vast majority of residential territory in Nebraska and New Jersey is also located within 2,500 feet of a school. (Bruell, Swatt, & Sample, 2008; Chajewski & Mercado, 2009; Zgoba, Levenson, & McKee, 2009.) Affordable housing is especially affected, since it tends to be in more densely populated areas, where homes are in closer proximity to places frequented by children.

Of nearly one million residential parcels studied in Miami-Dade County, Florida, only about 4% of residential units were outside the overlapping state and local restricted zones in effect, and only 1% had a monthly housing cost of $1,250 or less. (Zandbergen & Hart, 2009.) A study in Nebraska showed that average home values were significantly higher outside of the restricted zone of 2,000 feet, making it difficult for sex offenders to find affordable housing. (Bruell, et al., 2008.) Ohio showed the same pattern. (Red Bird, 2009.)

When prisoners are released from incarceration, they commonly seek housing with relatives, but strict residence laws can eliminate such options for sex offenders. Unable to reside with family, and without the financial resources to pay security deposits and rent payments, some sex offenders face homelessness. **Importantly, housing instability is consistently associated with higher criminal recidivism and absconding.** In Georgia, every time a parolee moved, the risk of re-arrest increased by 25%. (Meredith, Speir, & Johnson, 2007.) Residential instability was a robust predictor of absconding in a study of California parolees. (Williams, McShane, & Dolny, 2000.)

In a national sample of 2,030 offenders, those who moved multiple times during probation were almost twice as likely as stable probationers to have some sort of disciplinary hearing. (Schulenberg, 2007.) In New Zealand, unstable housing, unemployment, and limited social support were found to predict sexual recidivism. (Willis & Grace, 2009; Willis & Grace, 2008.) Some prosecutors and victim advocates have publicly denounced residence restrictions, cautioning that the transience created by housing restrictions undermines the validity of sex offender registries and makes it more difficult to track and supervise sex offenders. (Iowa County Attorneys Association, 2006; NAESV, 2006.)

## 4. Collateral Consequences of SORN Laws

The problems of re-entry commonly faced by other criminal offenders are exacerbated for registered sex offenders. The stigma of sex offender registration and community notification is well documented, as are the ways in which they can impede community re-entry and adjustment. (Levenson & Cotter, 2005b; Levenson, D'Amora, & Hern, 2007; Mercado, *et al.*, 2008; Sample & Streveler, 2003; Tewksbury, 2004, 2005; Tewksbury & Lees, 2006; Zevitz & Farkas, 2000.) Sex offenders have been surveyed in Florida, Indiana, Connecticut, New Jersey, Wisconsin, Oklahoma, Kansas, and Kentucky. They consistently reported adverse consequences such as unemployment, relationship loss, threats, harassment, physical assault, and property damage as well as psychological symptoms such as shame, embarrassment, depression, or hopelessness as result of public disclosure. Housing difficulties are commonly noted by registered sex offenders, and the proliferation of residential restriction laws compounds this problem. Obstacles to employment include the public disclosure of information (including employer address) on the registry, and restrictions prohibiting sex offenders from working within close proximity to a school.

Social stability and support increase the likelihood of successful reintegration for criminal offenders, and public policies that create obstacles to community reentry may compromise public safety. Stable employment and supportive relationships lead to lower recidivism rates for sex offenders. (Colorado Department of Public Safety, 2004; Kruttschnitt, Uggen, & Shelton, 2000.) It is well established that the stigma of even a non-sex offense felony conviction can inhibit participation in pro-social roles such as employment, education, parenting, and property ownership. (Tewksbury & Lees, 2007; Uggen, Manza, & Behrens, 2004.) Uggen *et al.* 2004

highlighted that self-concept, civic engagement, and stability are essential to an offender's identity as a conforming citizen and therefore to desistance from crime. Obstacles to reintegration reduce stakes in conformity and increase the likelihood that a criminal offender will resume a life of crime. (Hirshi, 1969; Travis, 2005.) SORN laws and policies interfere with employment, housing, social support, and engagement in pro-social activities, potentially and paradoxically reducing the deterrent effect intended by these laws.

The impact of SORN laws is also felt by the families of convicted sex offenders. Levenson and Tewksbury (2009) found that employment problems for registered sex offenders (RSOs) emerged as the most pressing issue identified by family members, followed by concerns about housing. The likelihood of housing disruption was higher for families of RSOs to whom residential restrictions applied; larger buffer distances were correlated with increased housing crises. Those who lived with an RSO were more likely to experience threats and harassment by neighbors. Children of RSOs were also reported to experience adverse consequences. More than half (58%) said they were treated differently by other children at school, or that their friendships had been affected (78%) by public notification. More than half said that the children of an RSO had experienced ridicule, teasing, depression, anxiety, fear, or anger. (Levenson & Tewksbury, 2009.) Family members of RSOs experienced high levels of social isolation, fear, shame, property damage, and forced residential relocation. Perceived stress was significantly higher for those who are of lower economic means, who feel isolated, have high levels of fear and shame/embarrassment, or were forced to move. (Tewksbury & Levenson, 2009.)

In another survey, several common themes emerged. Many family members spoke of persistent feelings of depression, hopelessness, and frustration as they adjusted to life with a registered sex offender. Many reported that housing and employment were disrupted by limitations imposed by the RSO's probation or registration requirements, resulting in economic hardships for family members. Family members felt they were subject to intense scrutiny and intrusion by parole or law enforcement agents, and that their right to privacy was severely affected by public notification procedures, leading to a great sense of shame and stigma. Many reported feeling "overwhelmed and demoralized," struggling to cope on a day-to-day basis. Some noted that reentry assistance policies (*e.g.*, the Second Chance Act) exclude sex offenders from receiving services. Stress for family members can impede the important role they play in facilitating successful reentry. (Farkas & Miller, 2007.)

## 5. Risk and Recidivism

### A. Overview

Some sex offenders are going to reoffend, and steps should be taken to prevent that from happening. But according to the U.S. Department of Justice, only 5.3% of sex offenders released from prison were re-arrested for a new sex crime within three years. (Bureau of Justice Statistics, 2003.) Over four to six years, only about 14% of more than 20,000 sex offenders (in an interna-

tional sample) were re-arrested for a new sex offense. (Hanson & Bussiere, 1998; Hanson & Morton-Bourgon, 2005.) A 24% recidivism rate was observed over 15 years (A. J. R. Harris & Hanson, 2004), and 27% were re-arrested over 20 years. (Hanson, Morton, & Harris, 2003.) (Note that these figures are for re-arrest rates, not re-conviction rates.) Thus, after two decades, nearly three-quarters of convicted sex offenders have not been re-arrested for a new sex crime.

**The vast majority of new sexual assaults are not committed by registered sex offenders.** (Bureau of Justice Statistics, 2003; Sandler, et al., 2008.) In fact, in New York, 95% of all arrests for sexual offenses are of offenders without a prior sexual offense conviction (*i.e.*, offenders who are not on the registry at the time of their arrests). (Sandler, *et al.*, 2008.) It is true that arrest data naturally underestimate true re-offense rates, because some crimes are never detected or reported to authorities. (Arrest data can also overstate re-offense rates, as some arrestees are not guilty.) The available research suggests, however, that after two decades the great majority of convicted sex offenders have not re-offended.

Risk and recidivism vary with the presence of risk factors. Risk assessment procedures consistently have been shown to improve the accuracy of predictions by setting thresholds for decision-making and by standardizing factors that professionals readily recognize as key diagnostic indicators. This process, known as the actuarial method, estimates the likelihood of a certain outcome by referring to the known (actual) outcomes of individuals with similar characteristics. Actuarial assessment is used in the insurance industry to adjust premiums and its uses are growing in a variety of other disciplines, including criminal justice. The actuarial method cannot predict with certainty that a given individual will behave in a particular way. It can, however, provide probability data with which to inform one's expectations regarding an individual and to screen offenders into relative risk categories. When sexual violence risk assessment procedures have been directly compared, empirically derived risk scales were better able to predict recidivism ($r = .61$) than clinical judgment alone ($r = .40$) or empirically guided assessments ($r = .41$). (Hanson & Morton-Bourgon, 2004.) As well, actuarial risk assessment has demonstrated significantly better utility in identifying recidivists than offense-based procedures.

The most commonly used and most well-researched risk assessment instrument, the Static-99 (Hanson & Thornton, 1999), is easily scored by anyone trained to do so (*e.g.*, probation agents, clinicians, case managers) and has demonstrated good predictive accuracy in multiple validation studies over the past several years. This instrument is used nationwide in all states that have sex offender civil commitment laws. Though not perfect, it offers a firm scientific basis for assessing the likelihood that a convicted sex offender will re-offend and assigning that individual to a risk category. Of additional interest with regard to AWA's newly enacted lifetime registration and supervision requirements is that the Static-99 scoring guidelines state that "the expected offense recidivism rate should be reduced by about half if the offender has five to ten years of offense-free behavior in the community. … **As offenders successfully live in the community without incurring new offenses, their recidivism risk declines**." (Static 99, p. 59.)

8

Without doubt, some registered sex offenders are pedophilic or sexually violent and are likely to pose a threat to public safety. For instance, a more extensive criminal history places an offender at increased risk for recidivism, as does younger age, a preference for male child victims, and a history of victimizing strangers. (Hanson & Bussiere, 1998; A. J. R. Harris & Hanson, 2004; A. J. R. Harris, Phenix, Hanson, & Thornton, 2003.) Nationwide, about 14% of all registered sex offenders are designated by states as high risk or sexually violent predators. However, sex offenders are more likely to commit subsequent non-sexual crimes than to reoffend sexually. (Bureau of Justice Statistics, 2003; Hanson & Bussiere, 1998; Sample & Bray, 2003, 2006) Moreover, the vast majority of new sexual assaults are not committed by registered sex offenders, but by first-time sex offenders. (Bureau of Justice Statistics, 2003.) Sexually motivated homicides have inspired most of our modern sex crime policies, but sex offenders are among the least likely criminals to murder their victims. (Sample, 2006.)

## B. Stranger Danger

The myth of "stranger danger" had led to policies designed to prevent predatory sexual assaults against children, which actually represents a very small percentage of sex crimes. Community protection policies tend to be passed in response to highly publicized sex crimes which often involve abduction and sexually motivated homicide. These types of offenses, however, are exceedingly rare. According to the Office of Juvenile Justice and Delinquency Prevention, there are about 115 cases nationwide in which children are abducted by strangers in a given year. (U.S. Department of Justice, 2002.) The most common types of child sexual abuse cases involve perpetrators who are well known to their victims. According to the Department of Justice, in 93% of sexual molestation cases the child is abused by a relative or family acquaintance. In fact, policies like community notification and residence restrictions may give parents a false sense of security by their implication that if we know where convicted sex offenders live, or if we banish them from our neighborhoods, children will be safe. **The disturbing reality is that sexually abused children are victimized by family members in 34% of cases, and by acquaintances in 59% of cases.** (Bureau of Justice Statistics, 2000.) About 40% of sexual assaults take place in the victim's own home, and 20% take place in the home of a friend, neighbor, or relative. (Bureau of Justice Statistics, 1997.) Only 7% of child sex abusers are strangers to their victims. (Berliner, Schram, Miller, & Milloy, 1995; Bureau of Justice Statistics, 2002.) Less than 1% of all murders involve sexual assault, and the prevalence of sexual murders has declined substantially since the 1970's. (Bureau of Justice Statistics, 1997.) Although cases involving children receive the most media coverage, 75% of sexual murder victims are over the age of 18. (Bureau of Justice Statistics, 1997.)

## C. Housing, Employment, and Family Support as Risk Factors for Recidivism

Practical, legal, and social consequences of crime are more severe for sex offenders than for other criminals. (Lees & Tewksbury, 2006; Uggen, Manza, & Thompson, 2006.) Hardships related to housing and employment, social stigma, and relationship problems can lead to higher

recidivism rates. (Lees & Tewksbury, 2006.) Conversely, employment, social bonds, and housing stability increase the likelihood of successful reintegration for all criminal offenders. (Kruttschnitt, et al., 2000; Petersilia, 2003; Uggen, 2002; Uggen, et al., 2004; Willis & Grace, 2009.) **Therefore, social policies which ostracize and disrupt the stability of sex offenders are unlikely to be in the best interest of public safety.**

### D. Lifetime Registration and Risk/Recidivism

**The recent trend toward lifetime registration for all sex offenders contradicts empirical evidence.** The result of this movement is a growing number of sex offender registrants which requires increased fiscal and personnel resources to update technology, enforce registration rules, and incarcerate violators. Research indicates that risk for sexual re-offending is reduced by half once the offender has spent 5-10 years offense-free in the community, and that risk continues to decline as time offense-free in the community lengthens. (A. J. R. Harris, et al., 2003.) Furthermore, risk for sexual recidivism declines with advancing age, meaning that the aging sex offender population is likely to pose less of a threat to public safety. There is no empirical evidence to support the notion that more frequent registration check-ins lower recidivism, nor is there evidence to conclude that additional reporting requirements (*e.g.,* email addresses, employment information) reduce recidivism. **Requiring registration for 25 years to life is therefore both inefficient and unnecessary, based on empirical research.**

### E. Effectiveness of Treatment in Reducing Recidivism

Sex offender treatment has been viewed with skepticism, and some studies have failed to detect significant differences in recidivism rates between treated and untreated offenders. (Furby, Weinrott, & Blackshaw, 1989; Hanson, Broom, & Stephenson, 2004; Marques, Wiederanders, Day, Nelson, & van Ommeren, 2005.) Other studies, however, have shown that cognitive behavioral therapy can diminish sex offense recidivism by about 40%. (Hanson, et al., 2002; Losel & Schmucker, 2005.) Although treatment does not guarantee success in every case, many sex offenders do benefit from therapy, and sex offenders who successfully complete treatment programs are re-arrested less often than those who do not. (Marques, et al., 2005, p. 97.) Collaborative approaches to sex offender management, supervision, and rehabilitation have been successful in reducing sex offense recidivism. (English, Pullen, & Jones, 1996, 1998.)

Collaborative risk management approaches evaluate and address individual offender's risks and needs, reinforce their strengths, and facilitate support systems. (English, *et al.*, 1996, 1998; Ward & Brown, 2004.) By working together, treatment providers and probation officers can apply restrictions and interventions relevant to a particular offender's patterns and risk factors. At the same time, the team can facilitate a plan that encourages engagement in pro-social activities and minimizes obstacles to reintegration.

### F. Failure to Register as a Risk Factor for Recidivism

Only four published studies have looked at the relationship between failure to register (FTR) and sex-offense recidivism. The first, conducted by researchers at the Washington State Institute of Public Policy, tracked over 12,000 sex offenders required to register between 1990 and 1999. The proportion of individuals convicted for FTR climbed steadily each year from 5% in 1990 to 18% in 1999. Results indicated that sex offenders with FTR convictions were more likely to be subsequently re-arrested. (Washington State Institute for Public Policy, 2006.) Most of the new convictions, however, were for general crimes (38.5%) and violent activity (15.8%), while sexual recidivism for the FTR group was 4.3%, compared to 2.8% for compliant registrants (statistical significance was not reported). Although the rates of sexual recidivism were slightly higher for those who failed to register, the proportion of offenders who sexually re-offended was very low for both groups, and not substantially different.

Duwe and Donnay (2010) found that FTR has become the most common type of recidivism for sex offenders released from prison in Minnesota. (This may be because FTR is the crime most likely to result in detection.) When analyzing the recidivism outcomes of 1,561 high-risk sex offenders who were required to register, the authors found that 11% had been convicted of FTR. They further reported that FTR did not predict future sexual or general recidivism. Instead, the results indicated only that a FTR conviction significantly increased the likelihood of subsequent FTR arrests. The authors found that FTR offenders were less educated, less likely to have participated in treatment, less violent, less likely to have assaulted victims of different age groups, more likely to be a minority, and more likely to have prior felonies and supervision violations. **Overall, the authors concluded that registration noncompliance did not appear to raise the risk for sexual reoffending.** (Duwe & Donnay, 2010.)

In South Carolina, a study involving 2,970 registered sex offenders indicated that those who failed to register were not more likely to sexually re-offend than those who cooperated with registration mandates. (Levenson, Letourneau, Armstrong, & Zgoba, 2010.) Specifically, 10% of the sample had registry violation convictions across a follow-up period of approximately six years. No statistically significant differences were found in the sexual recidivism rates for those with an FTR charge (11%) versus obedient registrants (9%). FTR offenders were younger, had more prior non-sexual arrests, were more likely to be non-white, and were less likely to have a minor victim. **In regression analyses, FTR did not predict sexual recidivism, although it was associated with non-sexual recidivism.** The authors concluded that FTR and sexual offending may represent different constructs, with FTR being related to rule breaking behavior and sexual offending being related to sexual deviance.

A similar study in New Jersey also revealed that FTR was not a significant predictor of sexual recidivism. (Zgoba & Levenson, in press.) Few differences between the groups were detected, but FTR offenders were more likely to have sexually assaulted a stranger and to have adult female victims. **These results further refuted the myth of the pedophilic predator who absconds in order to avoid detection.** These similar findings offer some common themes that

11

inform our understanding of FTR offenders: namely, that they are younger, more versatile criminals who tend not to specialize in the abuse of children.

In a related line of research, other scholars have noted that FTR is not tantamount to absconding. (A.J. Harris & Pattavina, 2009; Levenson & Harris, 2011.) It is doubtful that all sex offenders arrested for FTR are willful violators, as most FTR offenders are easily located and do not appear to have absconded. (Ackerman, Harris, Levenson, & Zgoba, 2011; Duwe & Donnay, 2010; A. J. Harris, Levenson, & Ackerman, under review; Levenson & Harris, 2011; Levenson, *et al.*, 2010.) Some sex offenders may appear to be "missing" due to inadequate or incomplete address information, data entry errors, lag times in updating registry information, unauthorized travel, or homelessness. (A.J. Harris & Pattavina, 2009.) Additionally, some offenders may be confused by complex registration requirements, carelessly disregarding their duty to update information, but remaining in their known locations despite their lapse.

**6. Conclusion: What Would an Effective Sex Offender Management System Look Like?**

**Empirically derived risk assessment models based on factors known to correlate with recidivism should be used to identify sex offenders who pose the greatest threat to public safety.** Public registries, if used, should be reserved for high-risk offenders. In this way, the public would be better informed specifically about pedophilic, predatory, repetitive, or violent sex offenders likely to commit new sex offenses. At the same time, collateral consequences could be minimized for lower risk offenders re-entering communities and attempting to become productive, law abiding citizens. **Given the dearth of evidence that public notification protects children, prevents recidivism, or improves public safety, lawmakers should consider the unintended consequences of these laws.**

In addition to risk-based classification, states should also create a mechanism for sex offenders to earn release from certain registration requirements, such as public notice and residency restrictions. Sex offenders should be permitted to request exemption or de-registration if: (1) they are assessed to pose a low risk to the community based on empirical and actuarial risk factors; (2) they have successfully completed a sex offender treatment program; and (3) they have been living in the community offense-free for at least five years. Such a policy would create evidence-based incentives for law-abiding behavior and would expand opportunities for positive psychosocial adjustment and community re-entry.

Risk-based classification and collaborative risk management evaluates individual offender's risks and needs, reinforces the offender's strengths, and facilitates support systems. (English, *et al.*, 1996, 1998; Ward & Brown, 2004.) By working together, treatment providers and probation officers can address an offender's unique behavior patterns and risk factors. At the same time, the team can facilitate a plan that encourages pro-social activities and minimizes the risks of recidivism.

Public education and awareness campaigns should highlight the likelihood that children will be abused by someone they know and trust. Parents should be made aware of the signs and symptoms of child sexual abuse and of the common types of grooming patterns used by perpetrators who gain access to victims via their positions of trust or authority. In addition, factual data about the relative rarity of child sex offenses and the low recidivism rates would temper the fear induced by current law and policy. "It does not help the child maltreatment field or the public and policymakers to see child molesters as simply incorrigibly compulsive fiends who cannot be stopped." (Finkelhor, 2003, p. 1227.) The media play a crucial role in public education and should be enlisted as responsible partners in the dissemination of accurate information. Sensationalistic journalism perpetuates the myths that tend to drive legislative responses, which are then ultimately less likely to accomplish their goals of protecting communities. (Proctor, Badzinski, & Johnson, 2002; Sample, 2001; Sample & Kadleck, 2006; Wright, 2003.)

**Enormous fiscal resources are allocated each year for registration and notification, despite the virtual absence of research demonstrating the effectiveness of these policies.** While there is little resistance to funding criminal justice initiatives, social services and prevention programs are often discarded first when budgets need to be balanced.

This means that victims of sexual abuse often go without therapy and counseling. Child protective services and foster care programs are often underfunded and poorly staffed. Early maltreatment can create a cycle of abuse in which individuals grow up to repeat behavior witnessed and learned in childhood. Many sex offenders have experienced such problems in their own families, including physical abuse, neglect, criminality, and substance abuse. (Seghorn, Prentky, & Boucher, 1987.) Though childhood sexual abuse alone is a weak predictor of future sexual violence, early sexual abuse combined with other developmental and family problems contribute to the development of abusive behaviors. (Hanson & Bussiere, 1998; Knight & Prentky, 1990.) Funding social services for abused children is an important step in preventing future sexual violence in our communities, but is often ignored in favor of punitive criminal justice responses.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury that the above statements are true and correct to the best of my knowledge, information, and belief.

_Jill Levenson_

_____

Jill S. Levenson, Ph.D.

Dated: January 13, 2012

References

Ackerman, A. A., Harris, A. J., Levenson, J. S., & Zgoba, K. (2011). Who are the people in your neighborhood? A descriptive analysis of individuals on public sex offender registries. *International Journal of Psychiatry and Law, 34*, 149-159.

Adkins, G., Huff, D., & Stageberg, P. (2000). The Iowa sex offender registry and recidivism. Des Moines: Iowa Department of Human Rights.

Berliner, L., Schram, D., Miller, L., & Milloy, C. D. (1995). A sentencing alternative for sex offenders: A study of decision making and recidivism. *Journal of Interpersonal Violence, 10*(4), 487-502.

Blood, P., Watson, L., & Stageberg, P. (2008). State legislation monitoring report. Des Moines, IA: Criminal and Juvenile Justice Planning.

Bruell, C., Swatt, M., & Sample, L. (2008). *Potential consequences of sex offender residency restriction laws: Housing availability and offender displacement.* Paper presented at the American Society of Criminology, St. Louis, MO.

Bureau of Justice Statistics. (1997). Sex offenses and offenders: An analysis of Data on rape and sexual assault. Washington, DC: U.S. Department of Justice.

Bureau of Justice Statistics. (2000). Sexual Assault of Young Children as Reported to Law Enforcement: Victim, Incident, and Offender Characteristics. Washington, DC: U.S. Department of Justice.

Bureau of Justice Statistics. (2002). Criminal Victimization. Washington, DC: U.S. Department of Justice.

Bureau of Justice Statistics. (2003). Recidivism of sex offenders released from prison in 1994. Washington, DC: U.S. Department of Justice.

Chajewski, M., & Mercado, C. C. (2009). An Evaluation of Sex Offender Residency Restriction Functioning in Town, County, and City-Wide Jurisdictions. *Criminal Justice Policy Review, 20*(1), 44-61.

Colombino, N., Mercado, C. C., Levenson, J. S., & Jeglic, E. L. (2011). Preventing sexual violence: Can examination of offense location inform sex crime policy? *International Journal of Psychiatry and Law, doi:10.1016/j.ijlp.2011.04.002*.

Colorado Department of Public Safety. (2004). Report on safety issues raised by living arrangements for and location of sex offenders in the community. Denver, CO: Sex Offender Management Board.

Duwe, G., & Donnay, W. (2008). The impact of Megan's Law on sex offender recidivism: The Minnesota experience. *Criminology, 46*(2), 411-446.

Duwe, G., Donnay, W., & Tewksbury, R. (2008). Does residential proximity matter? A geographic analysis of sex offense recidivism. *Criminal Justice and Behavior, 35*(4), 484-504.

Duwe, G., & Donnay, W. (2010). The effects of failure to register on sex offender recidivism. *Criminal Justice and Behavior, 37*(5), 520-536.

English, K., Pullen, S., & Jones, L. (1996). Managing adult sex offenders: A containment approach. Lexington, KY: American Probation and Parole Association.

English, K., Pullen, S., & Jones, L. (1998). The containment approach: An aggressive strategy for community management of adult sex offenders. *Psychology, Public Policy, and Law, 4*(1 / 2), 218-235.

Farkas, M. A., & Miller, G. (2007). Reentry and reintegration: Challenges faced by the families of convicted sex offenders. *Federal Sentencing Reporter, 20*(2), 88-92.

Finkelhor, D. (2003). The legacy of the clergy abuse scandal. *Child Abuse & Neglect, 27*, 1225-1229.

Freeman, N. J., & Sandler, J. C. (2009). The Adam Walsh Act: A False Sense of Security or an Effective Public Policy Initiative? *Criminal Justice Policy Review, Online First*(DOI 10.1177/0887403409338565), http://cjp.sagepub.com.

Furby, L., Weinrott, M., & Blackshaw, L. (1989). Sex offender recidivism:  A review. *Psychological Bulletin, 105*(1), 3-30.

Hanson, R. K., & Bussiere, M. T. (1998). Predicting relapse:  A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology, 66*(2), 348-362.

Hanson, R. K., & Thornton, D. (1999). Static-99:  Improving actuarial risk assessments for sex offenders. Ottawa: Department of the Solicitor General of Canada.

Hanson, R. K., Gordon, A., Harris, A. J. R., Marques, J. K., Murphy, W., Quinsey, V. L., et al. (2002). First report of the collaborative outcome data project on the effectiveness of treatment for sex offenders. *Sexual Abuse: A Journal of Research and Treatment, 14*(2), 169-194.

Hanson, R. K., Morton, K. E., & Harris, A. J. R. (2003). Sexual offender recidivism risk: What we know and what we need to know. *Annals of New York Academy of Sciences, 989*, 154-166.

Hanson, R. K., Broom, I., & Stephenson, M. (2004). Evaluating community sex offender treatment programs: A 12-year follow-up of 724 offenders. *Canadian Journal of Behavioural Science, 36*(2), 85-94.

Hanson, R. K., & Morton-Bourgon, K. (2004). Predictors of sexual recidivism: An updated meta-analysis. Ottawa, CA: Public Works and Government Services.

Hanson, R. K., & Morton-Bourgon, K. (2005). The characteristics of persistent sexual offenders: A meta-analysis of recidivism studies. *Journal of Consulting and Clinical Psychology, 73*(6), 1154-1163.

Harris, A. J., & Pattavina, A. (2009, 11/6/09). *Missing sex offenders and the utility of sex offender registration systems.* Paper presented at the America Society of Criminology, Philadelphia, PA.

Harris, A. J., Lobanov-Rostovsky, C., & Levenson, J. S. (2010). Widening the Net:  The Effects of Transitioning to the Adam Walsh Act Classification System. *Criminal Justice and Behavior, 37*(5), 503-519.

Harris, A. J., Levenson, J. S., & Ackerman, A. A. (under review). Registered Sex Offenders in the United States:  Behind the Numbers.

Harris, A. J. R., Phenix, A., Hanson, R. K., & Thornton, D. (2003). Static-99 Coding Rules Retrieved 10/15/08, from http://ww2.ps-sp.gc.ca/publications/corrections/pdf/Static-99-coding-Rules_e.pdf

Harris, A. J. R., & Hanson, R. K. (2004). Sex offender recidivism: A simple question. Ottawa: Public Safety and Emergency Preparedness Canada.

Hirshi, T. (1969). *Causes of delinquency*. Berkeley: University of California Press.

Iowa County Attorneys Association. (2006). Statement on sex offender residency restrictions in Iowa. Des Moines: Author.

Knight, R. A., & Prentky, R. A. (1990). Classifying sexual offenders:  The development and corroboration of taxonomic models.   NY:  Plenum. In W. L. Marshall, D. R. Laws & H. E. Barbaree (Eds.), *Handbook of sexual assault:  Issues, theories, and treatment of the offender.* New York: Plenum.

Kruttschnitt, C., Uggen, C., & Shelton, K. (2000). Predictors of desistance among sex offenders: The interaction of formal and informal social controls. *Justice Quarterly, 17*(1), 61-88.

Lees, M., & Tewksbury, R. (2006). Understanding Policy and Programmatic Issues Regarding Sex Offender Registries. *Corrections Today, 68*(1), 54.

Letourneau, E., Levenson, J. S., Bandyopadhyay, D., Sinha, D., & Armstrong, K. (in press). Effects of South Carolina's sex offender registration and notification policy on adult recidivism. . *Criminal Justice Policy Review.*

Levenson, J. S., & Cotter, L. P. (2005a). The impact of sex offender residence restrictions: 1,000 feet from danger or one step from absurd? *International Journal of Offender Therapy and Comparative Criminology, 49*(2), 168-178.

Levenson, J. S., & Cotter, L. P. (2005b). The effect of Megan's Law on sex offender reintegration. *Journal of Contemporary Criminal Justice, 21*(1), 49-66.

Levenson, J. S., D'Amora, D. A., & Hern, A. (2007). Megan's Law and its Impact on Community Re-entry for Sex Offenders. *Behavioral Sciences & the Law, 25*, 587-602.

Levenson, J. S., & Hern, A. (2007). Sex offender residence restrictions: Unintended consequences and community re-entry. *Justice Research and Policy, 9*(1), 59-73.

Levenson, J. S. (2008). Collateral consequences of sex offender residence restrictions. *Criminal Justice Studies, 21*(2), 153-166.

Levenson, J. S., & Tewksbury, R. (2009). Collateral damage: Family members of registered sex offenders. *American Journal of Criminal Justice, 34*(1), 54-68.

Levenson, J. S., Letourneau, E., Armstrong, K., & Zgoba, K. (2010). Failure to Register as a Sex Offender: Is it Associated with Recidivism? *Justice Quarterly, 27*(3), 305-331.

Levenson, J. S., & Harris, A. J. (2011). 100,000 Sex Offenders Missing … Or Are They? Deconstruction of an Urban Legend. *Criminal Justice Policy Review, doi: 10.1177/0887403411415398.*

Losel, F., & Schmucker, M. (2005). The effectiveness of treatment for sexual offenders: A comprehensive meta-analysis. *Journal of Experimental Criminology, 1*, 117–146.

Marques, J. K., Wiederanders, M., Day, D. M., Nelson, C., & van Ommeren, A. (2005). Effects of a relapse prevention program on sexual recidivism:  Final results from California's Sex Offender Treatment and Evaluation Project (SOTEP). *Sexual Abuse:  A Journal of Research & Treatment, 17*(1), 79-107.

Meloy, M. L., Miller, S. L., & Curtis, K. M. (2007, 11/16/07). *Distortion, Exaggeration & Hysteria in Sex Offender Legislation: The Deconstruction of State-Level Sex Offender Residency & Mobility Restrictions.* Paper presented at the American Society for Criminology, Atlanta, GA.

Meloy, M. L., Miller, S. L., & Curtis, K. M. (2008). Making Sense Out of Nonsense: The Deconstruction of State-Level Sex Offender Residence Restrictions. *American Journal of Criminal Justice, 33*(2), 209-222.

Mercado, C. C., Alvarez, S., & Levenson, J. S. (2008). The impact of specialized sex offender legislation on community re-entry. *Sexual Abuse: A Journal of Research & Treatment, 20*(2), 188-205.

Meredith, T., Speir, J., & Johnson, S. (2007). Developing and implementing automated risk assessments in parole. *Justice Research and Policy, 9*(1), 1-21.

NAESV. (2006). Community management of convicted sex offenders: Registration, electronic monitoring, civil commitment, mandatory minimums, and residency restrictions Retrieved 4/2/06, from www.naesv.org

Nobles, M. R., Levenson, J. S., & Youstin, T. J. (in press). Effectiveness of Residence Restrictions in Preventing Sex Offense Recidivism. *Crime and Delinquency*.

Petersilia, J. (2003). *When Prisoners Come Home: Parole and prisoner reentry.* New York, NY: Oxford University Press.

Prescott, J. J., & Rockoff, J. E. (2008). Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?  Retrieved 6/6/08, from http://ssrn.com/abstract=1100663

Prescott, J. J., & Rockoff, J. E. (2011). Do Sex Offender Registration and Notification Laws Affect Criminal Behavior? *Journal of Law and Economics, 54*, 161-206.

Proctor, J. L., Badzinski, D. M., & Johnson, M. (2002). The impact of media on knowledge and perceptions of Megan's Law. *Criminal Justice Policy Review, 13*(4), 356-379.

Red Bird, B. (2009). Assessing housing availability under Ohio's sex offender residency restrictions. Columbus, OH: Ohio State University.

Sample, L. L. (2001). *The social construction of the sex offender.*  Dissertation.

Sample, L. L., & Bray, T. M. (2003). Are sex offenders dangerous? *Criminology and Public Policy, 3*(1), 59-82.

Sample, L. L., & Streveler, A. J. (2003). Latent consequences of community notification laws. In S. H. Decker, L. F. Alaird & C. M. Katz (Eds.), *Controversies in criminal justice* (pp. 353-362). Los Angeles: Roxbury.

Sample, L. L. (2006). An examination of the degree to which sex offenders kill. *Criminal Justice Review, 31*(3), 230-250.

Sample, L. L., & Bray, T. M. (2006). Are sex offenders different? An examination of rearrest patterns. *Criminal Justice Policy Review, 17*(1), 83-102.

18

Sample, L. L., & Kadleck, C. (2006). The role of the media in sex offender legislation. *Unpublished manuscript.*

Sandler, J. C., Freeman, N. J., & Socia, K. M. (2008). Does a watched pot boil? A time-series analysis of New York State's sex offender registration and notification law. *Psychology, Public Policy and Law, 14*(4), 284-302.

Schram, D., & Milloy, C. D. (1995). Community notification:  A study of offender characteristics and recidivism. Olympia, WA: Washington Institute for Public Policy.

Schulenberg, J. L. (2007). Predicting noncompliant behavior: Disparities in the social locations of male and female probationers. *Justice Research and Policy, 9*(1), 25-57.

Seghorn, T. K., Prentky, R. A., & Boucher, R. J. (1987). Childhood sexual abuse in the lives of sexually aggressive offenders. *Journal of American Child and Adolescent Psychiatry, 26*, 262-267.

Tewksbury, R. (2004). Experiences and Attitudes of Registered Female Sex Offenders. *Federal Probation, 68*(3), 30-34.

Tewksbury, R. (2005). Collateral consequences of sex offender registration. *Journal of Contemporary Criminal Justice, 21*(1), 67-82.

Tewksbury, R., & Lees, M. (2006). Consequences of sex offender registration: Collateral consequences and community experiences. *Sociological Spectrum, 26*(3), 309-334.

Tewksbury, R., & Lees, M. (2007). Perception of Punishment:  How Registered Sex Offenders View Registries. *Crime and Delinquency, 53*(3), 380-407.

Tewksbury, R., & Levenson, J. S. (2009). Stress experiences of family members of registered sex offenders. *Behavioral Sciences and the Law, 27*(4), 611-626.

Travis, J. (2005). *But they all come back: Facing the challenges of prisoner reentry*. Washington, D.C.: Urban Institute Press.

U.S. Department of Justice. (2002). National Incidence Studies of Missing, Abducted, Runaway and Throwaway Children: NISMART.

Uggen, C. (2002). Work as a turning point in the life course of criminals: A duration model of age, employment and recidivism. *American Sociological Review, 65*, 529-546.

Uggen, C., Manza, J., & Behrens, A. (2004). Less than the Average Citizen: Stigma, Role Transition, and the Civic Reintegration of Convicted Felons. In S. Maruna & R. Immarigeon (Eds.), *After Crime and Punishment: Pathways to Offender Reintegration* (pp. 261-293). Devon, UK: Willan Publishing.

Uggen, C., Manza, J., & Thompson, M. (2006). Citizenship, democracy, and the civic reintegration of criminal offenders. *Annals of American Academy of Political and Social Science, 605*(1), 281-310.

Vasquez, B. E., Maddan, S., & Walker, J. T. (2008). The influence of sex offender registration and notification laws in the United States. *Crime and Delinquency, 54*(2), 175-192.

Veysey, B., Zgoba, K., & Dalessandro, M. (2009). A Preliminary Step towards Evaluating the Impact of Megan's Law: A Trend Analysis of Sexual Offenses in New Jersey from 1985 to 2005. *Justice Research and Policy*.

Ward, T., & Brown, M. (2004). The good lives model and conceptual issues in offender rehabilitation. *Psychology, Crime & Law, 10*(3), 243-257.

Washington State Institute for Public Policy. (2005). Sex offender sentencing in Washington State: Did community notification influence recidivism? Olympia: Author.

Washington State Institute for Public Policy. (2006). Sex offender sentencing in Washington State: Failure to register as a sex offender - revised. Olympia, WA: author.

Williams, F. P., McShane, M. D., & Dolny, M. H. (2000). Predicting parole absconders. *Prison Journal, 80*(1), 24-38.

Willis, G., & Grace, R. C. (2008). The Quality of Community Reintegration Planning for Child Molesters: Effects on Sexual Recidivism. *Sexual Abuse: A Journal of Research & Treatment, 20*(2), 218-240.

Willis, G., & Grace, R. (2009). Assessment of community reintegration planning for sex offenders: Poor planning predicts recidivism. *Criminal Justice and Behavior, 36*(5), 494-512.

Wright, R. G. (2003). Sex offender registration and notification: Public attention, political emphasis, and fear. *Criminology and Public Policy, 3*(1), 97-104.

Zandbergen, P., & Hart, T. C. (2006). Reducing housing options for convicted sex offenders: Investigating the impact of residency restriction laws using GIS. *Justice Research and Policy, 8*(2), 1-24.

Zandbergen, P., & Hart, T. (2009). Availability and Spatial Distribution of Affordable Housing in Miami-Dade County and Implications of Residency Restriction Zones for Registered Sex Offenders  Retrieved 9/9/09, from http://www.aclufl.org/pdfs/SORRStudy.pdf

Zevitz, R. G., & Farkas, M. A. (2000). Sex offender community notification:  Managing high risk criminals or exacting further vengeance? *Behavioral Sciences and the Law, 18*, 375-391.

Zevitz, R. G. (2006). Sex offender community notification: Its role in recidivism and offender reintegration. *Criminal Justice Studies, 19*(2), 193-208.

Zgoba, K., Levenson, J. S., & McKee, T. (2009). Examining the Impact of Sex Offender Residence Restrictions on Housing Availability. *Criminal Justice Policy Review, 20*(1), 91-110.

Zgoba, K., Witt, P., Dalessandro, M., & Veysey, B. (2009). Megan's Law: Assessing the Practical and Monetary Efficacy. Retrieved from http://www.ncjrs.gov/pdffiles1/nij/grants/225370.pdf

Zgoba, K., & Levenson, J. S. (in press). Failure to Register as a Predictor of Sex Offense Recidivism: The Big Bad Wolf or a Red Herring? *Sexual Abuse: A Journal of Research and Treatment*.

ATTACHMENT A

CURRICULUM VITAE

Curriculum Vitae
**JILL S. LEVENSON, Ph.D., LCSW**

## EDUCATION:

**Ph.D., Social Welfare, 2003**  Florida International University, Miami, FL.

**MSW, Clinical Social Work, 1987**  University of Maryland, School of Social Work, Baltimore, MD.

**BA, Sociology, 1985**  University of Pittsburgh, Pittsburgh, PA.

## ACADEMIC POSITIONS

**September 2004 - present:   LYNN UNIVERSITY, BOCA RATON, FLORIDA**
                                              **College of Liberal Education, Department of Psychology**
    **Associate Professor** (2008-present)
    **Assistant Professor and Human Services Department Chair** (2004-2008)

**May 1994-August 2004:     FLORIDA INTERNATIONAL UNIVERSITY, MIAMI, FLORIDA**

    **Instructor**, **School of Social Work**   (8/99-8/04)
    **Instructor, Professional Development Center (Child Protection Training Institute)**   (5/94 - 6/99)

## PROFESSIONAL CLINICAL EXPERIENCE

| | |
|---|---|
| 5/94-present | OAKBROOK COUNSELING CENTER, P.A.,   Ft. Lauderdale, FL. Clinical Social Worker, Clinical Supervisor & Consultant, private practice. |
| 11/99-12/04 | CHRYSALIS CENTER, INC., Ft. Lauderdale, FL. Clinical Consultant, Clinical Supervisor, & Field Instructor, children's mental health clinic. |
| 4/91-4/94 | FAMILY SERVICE AGENCY, INC., Ft. Lauderdale, FL. Clinical Supervisor, Field Instructor, & Clinical Social Worker, outpatient psychotherapy center. |
| 11/90-2/91 | KIDS IN DISTRESS, INC., Ft. Lauderdale, FL. Social Worker, therapeutic preschool program. |
| 10/89-9/90 | CHILD PROTECTION TEAM OF BROWARD COUNTY, FL. Social Worker, child protective services. |
| 9/87-6/89 | BALTIMORE COUNTY DEPT. OF SOCIAL SERVICES, Baltimore, MD. Social Worker, child protective services & foster care services. |

## LICENSURE & PROFESSIONAL REGULATION
- *Licensed Clinical Social Worker*, Florida, #SW2659
- *Qualified Supervisor For Licensure*, Florida Department of Health
- *Qualified sex offender treatment provider*, Florida Department of Corrections

12/22/2011

**PUBLICATIONS**

1. Levenson, J. S., Sandler, J. C., & Freeman, N. J. (under review). Do Failure to Register Laws Fail to Increase Public Safety? An Examination of Risk Factors and Sex Offense Recidivism in New York State.

2. Levenson, J.S. (in press). Beyond redemption? Myths and facts about sex offenders.  In R. Bohm and J. Walker (Eds.) *Demystifying crime and justice, 2nd edition*.  Oxford University Press.

3. Levenson, J.S. (in press). Turning knowledge into practice: Future directions in sex offender management policy.  In Hoberman and Phenix (Eds.) *Sexual Offenders: Diagnosis, risk assessment, and management*. Guilford Press.

4. Levenson, J.S. (in press). Exhibitionism: A Case Study.  In W. O'Donohue (Ed.) *Case Studies in Sexual Deviance*. Guilford Press.

5. Nobles, M. R., Levenson, J. S., & Youstin, T. J. (in press). Effectiveness of Residence Restrictions in Preventing Sex Offense Recidivism. *Crime and Delinquency*.

6. Levenson, J. S., & Harris, A. J. (2011). 100,000 Sex Offenders Missing … Or Are They? Deconstruction of an Urban Legend. *Criminal Justice Policy Review*.

7. Zgoba, K., & Levenson, J. S. (2011). Failure to Register as a Predictor of Sex Offense Recidivism: The Big Bad Wolf or a Red Herring? *Sexual Abuse: A Journal of Research and Treatment*.

8. Levenson, J. S., Tewksbury, R., & Giorgio-Miller, J. (2011). Experiences of nonoffending parents and caretakers in child sexual abuse cases. *Southwest Journal of Criminal Justice 8*(2).

9. Ackerman, A., Harris, A.J., Levenson, J.S., Zgoba, K. (2011). Who are the people in your neighborhood?  A descriptive analysis of individuals on public sex offender registries. *International Journal of Law and Psychiatry 34, 149-159*.

10. Colombino, N., Mercado, C.C., Levenson, J.S., & Jeglic, E. (2011). Preventing sexual violence: Can examination of offense location inform sex crime policy? *International Journal of Law and Psychiatry*.

11. Levenson, J.S. (2011). Sex offender policies in an era of zero tolerance. What does effectiveness really mean? *Criminology & Public Policy, 10(2), p. 229-233*.

12. Jeglic, E., Mercado, C. C., & Levenson, J. S. (2011). The Prevalence and Correlates of Depression and Hopelessness among Sex Offenders Subject to Community Notification and Residence Restriction Legislation. *American Journal of Criminal Justice*. DOI: 10.1007/s12103-010-9096-9

13. Letourneau, E. & Levenson, J.S. (2011). Preventing sexual abuse: Policy and practice. In Myers, D. (Ed.), *APSAC Handbook of Child Maltreatment, p. 307-322*. Sage Publications.

14. Levenson, J. S. (2011). Community protection from sexual violence: Intended and unintended outcomes of U.S. policies. In D. P. Boer, L. A. Craig, R. Eher, M. H. Miner & F. Pfafflin (Eds.), *International Perspectives on the Assessment and Treatment of Sexual Offenders: Theory, Practice and Research*. West Sussex: Wiley-Blackwell.

15. Levenson, J. S. (2011). But I didn't do it! Ethical treatment of sex offenders in denial. *Sexual Abuse: Journal of Research and Treatment 23(3)*.

16. Prescott, D. &  Levenson, J. S. (2010). Sex offender treatment is not punishment. *Journal of Sexual Aggression*. DOI: 10.1080/13552600.2010.483819

17. Willis, G.M., Levenson, J.S, & Ward, T. (2010). Desistance and attitudes towards sex offenders: facilitation or hindrance?  *Journal of Family Violence*, 25, 545-556.

18. Levenson, J. S., Letourneau, E., Armstrong, K., & Zgoba, K. (2010). Failure to register as a Sex Offender: Is it associated with recidivism? *Justice Quarterly, 27(3) 305-331*.

19. Zandbergen, P. A., Levenson, J. S., & Hart, T. (2010). Residential proximity to schools and daycares: An empirical analysis of sex offense recidivism. *Criminal Justice and Behavior, 37*(5), 482-502.

20. Harris, A. J., Lobanov-Rostovsky, C., & Levenson, J. S. (2010). Widening the Net:  The Effects of Transitioning to the Adam Walsh Act Classification System. *Criminal Justice and Behavior, 37*(5), 503-519.

21. Letourneau, E., Levenson, J. S., Bandyopadhyay, D., Armstrong, K., & Sinha, D. (2010). Effects of South Carolina's Sex Offender Registration and Notification Policy on Deterrence of Adult Sex Crimes. *Criminal Justice and Behavior, 37*(5), 537-552.

22. Levenson, J. S., Fortney, T., & Baker, J. N. (2010). Views of Sexual Abuse Professionals about Sex Offender Notification Policies. *International Journal of Offender Therapy and Comparative Criminology 54(2), 150-168*.

23. Levenson, J.S., Prescott, D., & D'Amora, D. (2010). Sex Offender Treatment: Consumer Satisfaction and Engagement in Therapy. *International Journal of Offender Therapy and Comparative Criminology 54(3)*.

24. Letourneau, E., Levenson, J.S., Bandyopadhyay, D., Armstrong, K., & Sinha, D. (2010). The Effects of Public Registration on Judicial Decisions. *Criminal Justice Review*.

25. Letourneau, E., Levenson, J.S., Bandyopadhyay, D., Sinha, D., & Armstrong, K. (2010). Effects of South Carolina's sex offender registration and notification policy on adult recidivism. *Criminal Justice Policy Review*.

26. Levenson, J. S. (2010). Sex offender residence restrictions and community re-entry. In A. Schlank (Ed.), *The Sexual Predator: Law, Policy, Evaluation and Treatment* (Vol. 4). Kingston, NJ: Civic Research Institute.

27. Levenson, J. S. (2009). Sex Offender Polygraph Examination: An Evidence-Based Case Management Tool for Social Workers. *Journal of Evidence Based Social Work, 6*, 361-375.

28. Chaffin, M., Levenson, J.S., Letourneau, E., & Stern, P. (2009). How safe are trick-or-treaters? An analysis of sex crimes on Halloween. *Sexual Abuse: Journal of Research & Treatment 21(3)*.

29. Tewksbury, R., & Levenson, J. S. (2009). Stress experiences of family members of registered sex offenders. *Behavioral Sciences and the Law, 27*(4), 611-626.

30. Doren, D. & Levenson, J.S. (2009). Diagnostic Reliability and Sex Offender Civil Commitment Evaluations:  A Reply to Wollert. *Sex Offender Treatment 4(1)*.

31. Levenson, J.S. (2009). Sex offender residence restrictions. In R. Wright (Ed.) *Sex Offender Policies*. New York: Springer Publishing Company.

32. Fortney, T., Baker, J. N., & Levenson, J. S. (2009). A Look in the Mirror: Sexual Abuse Professionals' Perceptions about Sex Offenders. *Victims and Offenders*, *4(1), 42-57*.

33. Levenson, J. S., & Tewksbury, R. (2009). Collateral damage: Family members of registered sex offenders. *American Journal of Criminal Justice 34 (1/2) 54-68*.

34. Zgoba, K., Levenson, J.S. & McKee, T. (2009). Examining the Impact of Sex Offender Residence Restrictions on Housing Availability. *Criminal Justice Policy Review, 20(1)*.

35. Levenson, J.S., Macgowan, M.J., Morin, J.W., & Cotter, L.P. (2009). Perceptions of sex offenders about treatment: Satisfaction and engagement in group therapy. *Sexual Abuse: Journal of Research & Treatment 21(1)*.

36. Levenson, J.S. & Prescott, D. (2009). Treatment experiences of civilly committed sex offenders: A consumer satisfaction survey. *Sexual Abuse: Journal of Research & Treatment 21(1)*.

37. Levenson, J.S. (2009). Sex offense recidivism, risk assessment, and the Adam Walsh Act. *Sex Offender Law Report*, *10(1)*.

38. Katz, S.M, Levenson, J.S., & Ackerman, A.R. (2008). Myths and facts about sexual violence: Public perceptions and implications for prevention. *Journal of Criminal Justice and Popular Culture, 15(3)*.

39. Mercado, C.C., Alvarez, S., & Levenson, J.S. (2008).  The Impact of Specialized Sex Offender Legislation on Community Re-Entry. *Sexual Abuse: Journal of Research & Treatment*, *20(2)*.

40. Levenson, J.S. (2008). Collateral consequences of sex offender residence restrictions. *Criminal Justice Studies 21(2), 153-166*.

41. Levenson, J.S., Becker, J., & Morin, J.W. (2008). The relationship between victim age and gender crossover among sex offenders. *Sexual Abuse: Journal of research and treatment*, *20(1), 43-60*.

42. Zgoba, K. & Levenson, J.S. (2008). Variations in the Recidivism of Treated and Non-Treated Sexual Offenders in New Jersey: An Examination of Three Time Frames. *Victims and Offenders*, 3(1), 10-30.

43. Morin, J.W. & Levenson, J.S. (2008).  Exhibitionism: Assessment and Treatment.  In D.R. Laws & W. O'Donohue (Eds) *Sexual Deviance*. Guilford Press, p. 76-107.

44. Levenson, J.S. (2008).  Risk assessment of criminal justice populations.  In Thomlison, B. & Corcoran, K. (Eds) *Evidence-Based Practice: A Student Manual for Criminal Justice and Social Work Internships*. Oxford Press.

45. Levenson, J.S. (2007). Sex offender civil commitment. In B. Cutler (Ed.) *Encyclopedia of Psychology and Law*. Sage Publications.

46. Levenson, J.S. (2007). Sex offender community notification. In B. Cutler (Ed.) *Encyclopedia of Psychology and Law*. Sage Publications.

47. Levenson, J.S., Zgoba, K., & Tewksbury, R. (2007). Sex Offender Residence Restrictions: Sensible Crime Policy or Flawed Logic?  *Federal Probation, 71(3), 2-9*.

48. Tewksbury, R. & Levenson, J.S. (2007). When Evidence is Ignored: Residential Restrictions for Sex Offenders. *Corrections Today, December 2007, p. 54-57*.

49. Brannon, Y., Levenson, J.S., Fortney, T., & Baker, J. (2007). Attitudes about Community Notification: A Comparison of Sexual Offenders and the Non-offending Public. *Sexual Abuse: Journal of research and treatment 19(4) 369-379*.

50. Levenson, J.S. (2007). The new scarlet letter: Sex offender policies in the 21st century. In D. Prescott, Ed., *Applying Knowledge to Practice: Challenges in the Treatment and Supervision of Sexual Abusers, p. 21-41*. Wood and Barnes Publishing.

51. Levenson, J.S. & Prescott, D. (2007). Considerations in evaluating the effectiveness of sex offender treatment. In D. Prescott  *Applying Knowledge to Practice: Challenges in the Treatment and Supervision of Sexual Abusers, p. 124-142*. Wood and Barnes Publishing.

52. Levenson, J.S, D'Amora, D., & Hern, A. (2007). Megan's Law and its Impact on Community Re-entry for Sex Offenders. *Behavioral Sciences and the Law (25), 587-602*.

53. Fortney, T., Levenson, J.S., Brannon, Y., & Baker, J. (2007). Myths and Facts about sex offenders: Implications for practice and public policy. *Sex Offender Treatment 2(1), 1-17*.

54. Levenson, J.S, & Hern, A. (2007). Sex offender residence restrictions: Unintended consequences and community re-entry. *Justice Research and Policy, 9(2), 59-73*.

55. Levenson, J.S, & D'Amora, D. (2007). Social policies designed to prevent sexual violence: The Emperor's new clothes. *Criminal Justice Policy Review, 18(2), 168-199*.

56. Prescott, D. & Levenson, J.S. (2007). Youth who have sexually abused: registration, recidivism, and risk. *ATSA Forum, Volume XVIII, No. 2, Spring 2007*.

57. Levenson, J.S. (2007). Residence restrictions and their impact on sex offender reintegration, rehabilitation, and recidivism. *ATSA Forum, Volume XVIII, No. 2, Spring 2007*.

58. Levenson, J.S., Brannon, Y., Fortney, T., & Baker, J. (2007). Public perceptions about sex offenders and community protection policies. *Analyses of Social Issues and Public Policy, 7(1), 1-25*.

59. Packard, R.L. & Levenson, J.S. (2006). Revisiting the reliability of diagnostic decisions in sex offender civil commitment. *Sex Offender Treatment, 1(3).*

60. Levenson, J.S. & Morin, J.W. (2006). Factors predicting selection of sexual offenders for civil commitment. *International Journal of Offender Therapy and Comparative Criminology, 50(6), 609-629.*

61. Levenson, J.S. (2006). Sexual harassment or consensual sexual relations? Implications for social work education. *Journal of Social Work Values and Ethics 3(2).*

62. Levenson, J.S. (2006). Sex offender residence restrictions. *Sex Offender Law Report, 7(3), April/May 2006, p. 33.*

63. Levenson, J.S. & Morin, J.W. (2006). Risk assessment in child sexual abuse cases. *Child Welfare, 85(1), 59-82.*

64. Kokish, R., Levenson, J.S., & Blasingame, G. (2005). Post conviction sex offender polygraph examination: Client perceptions of accuracy and utility. *Sexual Abuse: Journal of Research & Treatment, 17(2), 211-221.*

65. Levenson, J.S. (2005). Sex offender residence restrictions: *Report to the Florida Legislature.*

66. Levenson, J.S. & D'Amora, D. (2005). An ethical paradigm for sex offender treatment. *Western Criminology Review. 6(1).*

67. Levenson, J.S. & Cotter, L.P. (2005). The impact of sex offender residence restrictions: 1,000 feet from danger or one step from absurd? *International Journal of Offender Therapy and Comparative Criminology, 49(2), 168-168.*

68. Levenson, J.S. & Cotter, L.P. (2005). The impact of Megan's Law on sex offender reintegration. *Journal of Contemporary Criminal Justice. 21(1), 49-66.*

69. Levenson, J.S. (2004). Sexual predator civil commitment: A comparison of selected and released offenders. *International Journal of Offender Therapy and Comparative Criminology, 48(6), 638-648.*

70. Levenson, J.S. (2004). Reliability of sexually violent predator civil commitment criteria. *Law & Human Behavior, 28(4), 357-368.*

71. Levenson, J.S. & Macgowan, M.J. (2004). Engagement, denial, and treatment progress among sex offenders in group therapy. *Sexual Abuse: Journal of Research & Treatment, 16(1), 49-64.*

72. Levenson, J.S. (2004). Policy interventions designed to combat sexual violence:  Community notification and civil commitment. In R. Geffner & K. Franey (eds.) *Identifying and Treating Sex Offenders: Current Approaches, Research, and Techniques.* New York: Haworth Press.

73. Levenson, J.S. (2004). Everything You Ever Wanted To Know About Sex Offenders but Were Afraid To Ask: ATSA's Role in Public Education. *ATSA Forum, Volume XVI, No. 2, Spring 2004*

74. Levenson, J.S. (2003). Community notification and civil commitment of sex offenders:  A review of policies designed to combat sexual violence. *Journal of Child Sexual Abuse, 12(3/4).*

75. Macgowan, M. J., & Levenson, J. S. (2003). Psychometrics of the Group Engagement Measure with male sex offenders. *Small Group Research*, *34*(2), 155-169.

76. Levenson, J.S. (2003).  Book Review of <u>Inside the Brain</u>.  *Social Work in Health Care, 36(3),* 97-99.

77. Morin, J.W., and Levenson, J.S. (2002).  *The Road to Freedom*. [A workbook for sex offenders in treatment].  Distributed by Safer Society Press: Brandon, VT.

78. Levenson, J.S. and Morin, J.W. (2001).  *Treating Nonoffending Parents in Sexual Abuse Cases: Connections in Family Safety*.  Thousand Oaks, CA:  Sage Publications.

79. Levenson, J.S. and Morin, J.W. (2001). *Connections workbook for non-offending parents*.  Thousand Oaks, CA:  Sage Publications.

80. Levenson, J.S. (2001). Overstating the Obvious:  Social Workers are Mandated Reporters! (Part 2) *NASW Florida Chapter Newsletter, May/June*.

*81.* Levenson, J.S. (2001). Overstating the Obvious:  Social Workers are Mandated Reporters! (Part 1*) NASW Florida Chapter Newsletter*, *March/April*.

82. Levenson, J.S. & Morin, J.W. (1998).  The Role of the Nonoffending Parent in Sexual Abuse Prevention.  *ATSA Forum, Vol. X, No. 2, Summer 1998.*

*83.* Morin, J.W., Levenson, J.S., & Cotter, L.P. (1998).  *New Directions in the Management of Sexual Offenders:  A Report to the Florida Legislature*.  Tampa, FL:  Florida Association for the Treatment of Sexual Abusers.

**Dissertation**: Levenson, J. S. (2003). Factors predicting recommendations for civil commitment of sexually violent predators under Florida's Jimmy Ryce Act. *Dissertation Abstracts International, 64*(03), UMI no. AAT 3085817.

## RESEARCH FUNDING

**$150,000**   awarded October 2010   Award # 2010-WP-BX-0006
<u>Department of Justice (SMART Office)</u>                                          Role: Consultant
Principal Agency Recipient: Palm Beach County Sheriff's Office
*Comprehensive Approaches to Sex Offender Management Grant Program Palm Beach County's Comprehensive Sex Offender Management Strategy*. This project will implement a multi-faceted, multi-disciplinary strategy that incorporates assessment, risk-based supervision, registration and notification, re-entry services and treatment, and multi-disciplinary collaboration.

**$507,000**   awarded 7/08   Award # 2008- MU-MU- 0001
<u>National Institute of Justice</u>                                          Role: Co-Investigator
Principal Investigator: Kristen Zgoba, New Jersey Department of Corrections.
*A Multi-state Sexual Violence Recidivism Study investigating the predictive validity of Static-99 Risk Scores and Adam Walsh Act Tier Guidelines*. This study will compare the abilities of Static-99 scores and Adam Walsh Act classifications to predict sexual recidivism.

**$484,000** awarded 7/12/06
<u>National Institute of Justice</u>                                         Role: Co-Investigator
Principal Investigator: Elizabeth Letourneau, Medical University of South Carolina
*Evaluating the Effectiveness of Sex Offender Registration & Notification Policies for Reducing Sexual Violence Against Women*. This study will examine whether sex offender registration and notification laws in South Carolina have had the intended effect of reducing sex crime rates in general and sex offense recidivism specifically.

**$296,656** awarded 8/07
<u>National Institute of Justice</u>                                         Role: Consultant
Principal Investigator: Elizabeth Jeglic, John Jay College of Criminal Justice
*Sex Offender Management, Treatment, and Civil Commitment: An Evidence-Based Analysis Aimed at Reducing Sexual Violence*. This research project involves a comprehensive examination of the treatment and subsequent recidivism of sex offenders incarcerated or detained in the mental health and criminal justice systems in New Jersey.

**$1,000** Pre-doctoral Research Grant awarded October 2002
<u>Association for the Treatment of Sexual Abusers</u>          Role: Principal Investigator (dissertation)
*Factors Predicting Recommendations for Civil Commitment of Sexually Violent Predators under Florida's Jimmy Ryce Act*. This research examined the psychological evaluation process and identified factors predicting civil commitment.

## <u>AWARDS</u>

Nominee, Faculty member of the year. Lynn University 2009.

Scholarly Forum Competition, Second Place Winner
*"Empirically Based Risk Assessment of Child Sexual Abuse."*
Awarded by the Graduate Student Association, Florida International University, April 2001

**Expert Witness Qualification, Broward County (FL) Circuit Court**

- Judge Kearney
- Judge Holmes
- Judge Frusciante
- Judge Seidlin
- Judge Aramony
- Master Beilly
- Judge Birken
- Judge Gold
- Judge Horowitz

**Expert Witness Qualification, Duval County (FL) Circuit Court**

- Judge Eleni Derke
- Judge Russell Healey

## <u>PROFESSIONAL SERVICE</u>

**Professional Affiliations**

- Member, National Association of Social Workers (1987 – present)
- Member, Association for the Treatment of Sexual Abusers (1994 – present)
- Member, American Society of Criminology (2006– present)
- Member, Society for Social Work and Research (2004 – 2006)
- Member, American Professional Society on the Abuse of Children (1996-2004)

**Scholarly Service**
- Editorial Board. <u>Sexual Abuse: Journal of Research and Treatment</u>
- Research grant proposal reviewer. <u>National Science Foundation</u>
- Research grant proposal reviewer. <u>National Institute of Justice</u>
- Manuscript reviewer. <u>American Journal of Criminal Justice</u>
- Manuscript reviewer. <u>Criminology & Public Policy</u>
- Manuscript reviewer. <u>Journal of Research on Crime & Delinquency</u>
- Manuscript reviewer. <u>Child Maltreatment</u>
- Manuscript reviewer. <u>Journal of Criminal Justice</u>
- Manuscript reviewer. <u>Analyses of Social Issues and Public Policy</u>
- Manuscript reviewer. <u>Justice Quarterly</u>
- Manuscript reviewer. <u>Sexual Abuse: Journal of Research and Treatment</u>
- Manuscript reviewer. <u>American Journal of Orthopsychiatry: Interdisciplinary Perspectives on Mental Health and Social Justice</u>
- Manuscript reviewer. <u>Justice Research and Policy.</u>
- Manuscript reviewer. <u>International Journal of Offender Therapy and Comparative Criminology.</u>
- Manuscript reviewer. <u>Human Rights Watch.</u>
- Manuscript reviewer. <u>Sociological Spectrum.</u>
- Manuscript reviewer. <u>Journal of Research on Social Work Practice</u>.
- Manuscript reviewer. <u>Ethical Human Sciences and Services.</u>
- Abstract Reviewer, Annual Conference, Association for the Treatment of Sexual Abusers (2006-present)
- Editor, <u>Florida Forum</u> (1996-2001), Newsletter of the Florida Chapter of the Association for the Treatment of Sexual Abusers (FATSA)
- Abstract Reviewer, 12th National Conference on Child Abuse & Neglect, (1998)

**Community Service**
- Invited Member, Sex Offender Housing Task Force, Council of State Governments, (2008)
- Member, National Advisory Board, Safer Society Foundation (Oct. 2007 – present)
- Member, Prevention Coalition, National Center for Missing and Exploited Children (Oct. 2006 – Dec 2007)
- Board Member (2001-2007), Association for the Treatment of Sexual Abusers (ATSA)
- Committee Chair (Oct. 2003 – 2007), ATSA Ethics Committee (member to present)
- Committee Chair (May 2002 – Oct. 2003), ATSA Organization & Development Committee
- Member, ATSA Public Policy Committee
- President (2001-2004), Florida Association for the Treatment of Sexual Abusers (FATSA)
- Board Member (1996-present), FATSA
- Member (1999-2002), Statewide Child Abuse Death Review Team; Appointed by the Secretary of the Florida Department of Health
- Member, Broward County Sexual Abuse Intervention Network (SAIN) (1999-2002)
- Subject Matter Expert On Sexual Violence for the Department of Corrections, Broward County Probation Officers
- Advisory Board Member, (1996-1998), Crawford Center, Inc. (A residential facility for sexually aggressive children)
- Invited Member, Assessment Workgroup, Child Welfare League Of America, (1995-1996)

## PUBLIC POLICY ACTIVITIES

2009 Chair, Broward County Sex Offender / Sexual Predator Task Force (appointed by Broward County Commissioners).

October 16, 2008. Invited testimony before the Vermont Legislature regarding sex offender registration, risk assessment, and the Adam Walsh Act.

August 29, 2008. Invited testimony before the Vermont Legislature regarding sex offender registration, notification, and residence restrictions.

March 18, 2008. Invited testimony before the Florida Legislature's Senate Criminal Justice Committee regarding proposed House Bill 1430: Residence of sex offenders and predators.

August 16, 2007. Invited testimony before the New Mexico Legislature's Courts and Justice Committee regarding sex crime policies

November 15, 2006. Invited testimony before the Kansas Legislature regarding residence restrictions for sex offenders and predators.

October 19, 2005. Invited testimony before the Florida Legislature's House Judiciary Committee regarding proposed House Bill 91: Residence of sex offenders and predators.

ATSA (2005). Contributor: Amicus Brief submitted to the United States Supreme Court by the Association for the Treatment of Sexual Abusers in the case of Doe v. Miller. [Regarding sex offender residence restrictions]

ATSA (2002). Contributor: Amicus Brief submitted to the United States Supreme Court by the Association for the Treatment of Sexual Abusers in the case of Connecticut Dept. of Public Safety v. John Doe. [Regarding implementation of "Megan's Law"]

## UNIVERSITY SERVICE

- IRB
- Internship Committee
- Human Services Dept Chair
- Strategic Academic Assessment Plan Task Force
- Taskforce on Professoriate
- Quantitative Reasoning taskforce

- 3 dissertation committees, 1 QP committee
- Research practicum site for Masters in Psych students
- Clinical supervisor, Masters in Psych students
- Sexual Assault Response team
- Alert Team 2006-2007
- Student Conduct Review Board

Courses taught at Lynn: Introduction to Human Services; Groupwork & Family Systems; Social Problems & Policy; Ethical Practice; Current Perspectives in Substance Abuse; Introduction to Sociology; Assessment & Interviewing; Criminal Justice Research Methods; Case Management Strategies; Human Services Senior Seminar. Masters in Applied Psychology Internship Seminar.

Courses taught at FIU: Graduate courses taught: Human Behavior and the Social Environment I; Psychopathology (HBSE II); Theory and Practice with Family Violence; Social Welfare Policy; Child & Family Policy; Social Welfare Policy & Services. Undergraduate courses taught: Child Welfare Policy and Practice; Human Behavior and the Social Environment I; Social Work Practice Methods with Individuals; Social Work Practice Methods with Families and Groups; Techniques of Interviewing.

**DOCTORAL STUDENT SUPERVISION**

Tina Bauer Goldsmith (2007-2008), Lynn University Ph.D. in Global Leadership. Dissertation committee. *Emotional Intelligence and work performance*.

Judith Cineas (2007-2008), Lynn University Ph.D. in Global Leadership. Dissertation committee. *Faculty perceptions of student evaluations of teaching*.

Sherry Fulmore-Murray (2005-2008), Lynn University Ph.D. in Educational Leadership. Qualifying paper committee chair. *Violence against GLBT high school students*.

Markell Harrison-Jackson (2005-2009), Lynn University Ph.D. in Educational Leadership. Dissertation committee chair. *Factors Influencing Self-sufficiency Outcomes for Emancipated Foster Youth*.


**SELECTED MEDIA APPEARANCES**

Vitelli, Romeo (November 29, 2011). How useful are public sex offender registries? *Huffington Post*.
Crocker, Lizzie (November 22, 2011). The Penn State Scandal: 7 Facts about child sex abuse. *Daily Beast*.
Hudack, Stephen (November 14, 2011). Lake mulls new restrictions for sex offenders. *Orlando Sentinel*.
Nguyen, Linda (November 4, 2011). Sex offender registries don't deter convicts from reoffending. *Calgary Herald*.
Bluestein, Greg (July 19, 2010). Georgia softens once lauded sex offender law. *Associated Press*.
Gardner, Michael (April 12, 2010). King parents lobby for Chelsea's Law. *San Diego Union Tribune*.
Skipp, Catherine (February 1, 2010). A law for sex offenders living under a Miami bridge. *Time Magazine*.
Frank, John (February 24, 2010). Sex Laws Revisited. *Miami Herald*.
Levenson, Jill (November 4, 2009). Child safety zones work. *Miami Herald* (OP-ED).
Knutson, Ryan (September 3, 2009). Sex-Registry Flaws Stand Out. *Wall Street Journal*.
Gallacher, Andy (August 13, 2009). Florida faces sex offender dilemma. *BBC*.
Levenson, Jill (August 11, 2009). Residency rules endanger us. *Miami Herald* (OP-ED).
Harlem, Georgia (August 6, 2009). Unjust and Ineffective. *The Economist*.
Skipp, Catherine (August 3, 2009). A Bridge Too Far. *Newsweek*.
Rood, Lee (July 19, 2009). Sex offender costs to skyrocket. *Des Moines Register*.
Rodriguez,  Ihosvani (July 9, 2009). Where neighbors are sex offenders. *South Florida Sun Sentinel*.
Grimm, Fred (June 20, 2009). Sex offender laws burden neighborhood. *Miami Herald*.
Vick, Karl (December 27, 2008). Laws to track sex offenders encouraging homelessness. *Wall Street Journal*.
Reed Ward, Paula (October 26, 2008). Residency restrictions for sex offenders popular, but ineffective. *Pittsburgh Post-Gazette*.
Sandberg, Lisa (October 16, 2008). AG wants online IDs of sex predators listed. *San-Antonio Express News*.
Spangler, Nicholas (April 8, 2008). For sexual predators, a camp of isolation. *Miami Herald*.
Arkowitz,  Hal & Lilienfeld, Scott (April, 2008). Once a sex offender, always a sex offender? Maybe not. *Scientific American*.
White, Nicola (April 2, 2008). Senate committee OKs sex offender bill. *Tampa Tribune*.
Koch, Wendy (November 19, 2007). Many sex offenders are often homeless. *USA Today*.
Lane, Mary Beth (October 7, 2007). Sex offender ghettos. *Columbus Dispatch*.

12/22/2011

Sher, Julian & Carey, Benedict (July 19, 2007). Debate on child pornography's link to molesting. *New York Times*.

Hopkins, Andrea (June 1, 2007). Fear and hatred push U.S. sex offenders to fringes. *Reuters*.

Keller, Larry (May 19, 2007). Residence limits keep sex offenders on move. *Palm Beach Post*.

Sex offender housing restrictions (March 7, 2007). *ABC World News with Charles Gibson*.

Koch, Wendy (February 26, 2007). Sex offender residency laws get a second look. *USA Today*.

Aldhous, Peter (February 21, 2007). Sex offenders: Throwing away the key. *New Scientist Magazine*.

Kalfrin, Valerie & Stanley, Doug (February 18, 2007). Protecting kids is goal, but how? *Tampa Tribune*.

Eltman Frank (February 16, 2007). New NIMBY twist: Move LI sex offenders around in trailers. *Associated Press*.

Bauer, Laura (February 12, 2007). Kansas resists buffer zones. *Kansas City Star.*

Rood, Lee (January 30, 2007). Lawmakers debate sex offender laws. *Des Moines Register*.

Woodard, Elaine (December 19, 2006). Sex sting suspect teaches children martial arts. *Daytona News-Journal*.

Klepal, Dan (December 11, 2006). Limits on sex offenders questioned. *Cincinnati Enquirer*.

Smith, Jennifer (December 2, 2006). Residency laws for sex offenders under microscope. *Newsday*.

Thompson, Elaine (November 19, 2006). Nowhere to go but out. *Worcester Telegram*.

Warren, Jenifer (November 9, 2006). U.S. Judge blocks portion of new sex offender measure. *Los Angeles Times*.

Warren, Jenifer (October 30, 2006). Sex crime residency laws exile offenders. *Los Angeles Times*.

The Predator Next Door. *MSNBC Documentaries*

Greenblatt, Alan (September 8, 2006). Sex Offenders. *Congressional Quarterly*.

Cambria, Nancy (September 3, 2006). O'Fallen, MO expected to rein in where sex offenders can live. *St. Louis Dispatch*.

Associated Press (July 23, 2006). Panel to mull changes in online sex offender list. *Boston Globe*.

Bauer, Laura & Rizzo, Tony (June 12, 2006). When evil lurks near our children. *Kansas City Star*.

Martin, Mark (June 2, 2006). California's most unwanted: Restrictions on residency make nomads of paroled sex offenders. *San Francisco Chronicle*.

McGraw, Seamus (April 20, 2006). Flaws in sex offender laws. *Court TV Crime Library* http://www.crimelibrary.com/news/original/0406/2001_sex_offenders.html.

Crary, David (April 19, 2006). Rethinking sex offender laws a tough sell. *Associated Press*.

Mooney, Jennifer (April 18, 2006). Bills aim to restrict sexual predators. *Miami Herald*.

Grotto, Jason (4-day series 1/29/05 – 2/1/06). Predators among us. *Miami Herald*.

Payne, Melanie (December 18,2005). Sex offender site criticized. *Southwest Florida News-Press*.

Koloff, Abbott. (December 12, 2005). Mt. Olive defends sex offender law. *New Jersey Daily Record*.

Associated Press. (December 5, 2005). Child porn a growing problem online. *Associated Press*

Weir, Kytja (November 22, 2005. Suspect has prior sex crime conviction. *Charlotte Observer*.

Sloan, Karen (November 20, 2005). Managing predators among us. *Omaha World-Herald*.

Dvorak, Todd (November 11, 2005). Iowa cities, towns barring child molesters. *Associated Press*.

Dvorak, Todd (November 4, 2005). Sex offender law gets another challenge. *Associated Press*.

Garcia, Jason (October 20, 2005). Lawmaker to re-vamp sex offender limits. *South Florida Sun-Sentinel*.

Gomez, Alan (October 20, 2005). Florida lawmakers consider tougher statewide restrictions for sex offenders. *Palm Beach Post.*

Saunders, Jim (October 20, 2005). Lawmakers want uniform law. *Daytona News-Journal*.

(October 16, 2005). Communities now have eviction power in pedophile ban. *Associated Press*.

Price, Rita & Sheehan, Tom (October 16, 2005). Sex offender zoning faulted. *Columbus Dispatch*.

Garcia, Jason (October 16, 2005). Sex offender laws prepared. *South Florida Sun-Sentinel*.

Clayworth, Jason (October 11, 2005). Researcher says laws are flawed. *Des Moines Register*.

Grimm, Fred (October 9, 2005). Sex offenders have a place to go: the shadows. *Miami Herald*.

Harris, Bonnie (October 4, 2005). Ely declares itself 'predator free zone.' *Des Moines Register*.

Worth, Robert (October 3, 2005). Exiling sex offenders from town. *New York Times*.

Levenson, Jill (September 28, 2005). Laws don't help keep kids safe. *Miami Herald*. Op-Ed.

Correll, Deedee & Hethcock, Bill (September 27, 2005). Therapy promises no cure, just reduced risk. *Colorado Springs Gazette*.

Olkon, Sara (September 19, 2005). Not sex predators, but still outcasts. *Miami Herald*.

Levenson, Jill (September 18, 2005). E-alerts on sex offenders. *New York Daily News*. Op-Ed.

Garcia, Jason (September 15, 2005). Legislator seeks statewide law limiting where sex predators can live. *South Florida Sun-Sentinel*.

Carlson, Mike (August 25, 2005). Not in my City. *Orlando Weekly*.

Turner, Jim (August 15, 2005.) Martin, St. Lucie look to keep sex offenders farther from children. *Port St. Lucie News*.

Perez, Robert (August 14, 2005). Offender rules may backfire, some say. *Orlando Sentinel*

Ruger, Todd (August 4, 2005). New emails warn of nearby offenders. *Sarasota Herald-Tribune*.

Perez, Robert (July 15, 2005). Zone law to hit sex offenders. *Orlando Sentinel*

Pedicini, Sandra & Cox, Erin (June 22, 2005). Child-molester curbs questioned. *Orlando Sentinel*.

Hemel, Daniel (June 22, 2005). Exile sex offenders from Manhattan, say 14 members of the city council. *New York Sun*.

Hill, Michael (June 20, 2005). Are sex offender laws becoming counterproductive? *Associated Press*.

Moore, Martha (June 20, 2005). States look to high-tech tools to track, map sex offenders. *USA Today*.

Valdemoro, Tania (June 15, 2005). Boce putting sex offenders on channel 20. *Palm Beach Post*.

Willhoit, Dana (June 12, 2005). Experts disagree on treating sexual criminals. *Lakeland Ledger*.

Fisher, Lise (June 13, 2005). Most sex offenders live in rural areas. *Gainesville Sun*.

Torres, Ginelle (June 10, 2005). Sex Offenders Restricted. *South Florida Sun-Sentinel*.

Holland, John (May 29, 2005). South Florida cities target sex offenders in an effort to protect children. *South Florida Sun-Sentinel*.

Medicaid Program says no Viagra for sex offenders (May 27, 2005). *Maine Things Considered*. Maine Public Broadcasting Network.

Musgrave, Jane (May 16, 2005). Murders ignite frenzied furor toward molesters. *Palm Beach Post*.

Dennis, Brady & Waite, Matthew (May 15, 2005). Where is a sex offender to live? *St. Petersburg Times*.

Silvestrini, Elaine (May 1, 2005). State's policies on sex convicts among sternest. *Tampa Tribune*.

Sex Crimes, No easy Answers (April 26, 2005). *The Pat Campbell Show*. WFLA Talk Radio, Orlando FL.

Moeller, Katy (April 24, 2005). Consequences Stem from Sex Offender Registry. *Schenectady Gazette*.

Tracking Sex Offenders (April 21, 2005). *ABC World News Tonight with Peter Jennings*.

Snyder, Susan (December 19, 2004). Shocking Sex Acts in School. *Philadelphia Inquirer*.

Fisher, Lise (November 17, 2004). Chemical castration is ordered for convict. *Gainesville Sun*.

Kelly, Dan (June 27, 2004). Therapist says sex predators can change behavior. *Reading Eagle*.

Lewis, Ken (August 17, 2003). An attempt to explain the unexplainable: Experts share insights into rape, its effects. *St. Augustine Record*.

Wolfson, John (July 6, 2003). Locked Away. *Orlando Sentinel*.

Stopping child sexual abuse (March 27, 2003). *Child Protection Report*, 29(7).

Munno, Greg (December 9, 2002). Sex offender seeks custody of two girls. *Syracuse Post-Standard*.

Richey, Warren (November 13, 2002). Megan's Law faces high-court test. *Christian Science Monitor*.

## INVITED PRESENTATIONS

Levenson, J.S. (2011).  *Sex offender policy trends: Research and Practice*.  Michigan State Bar Association. Dearborn, MI, 9/16/11.

Levenson, J.S. (2010).  *Sex offender policy trends: Research and Practice*.  Keynote speaker, Colorado Sex Offender Management Board. Breckenridge, CO, July 16, 2010.

Levenson, J.S. (2010).  *Sex offender policy trends: Research and Practice*.  Keynote speaker, Minnesota Association for the Treatment of Sexual Abusers. Minneapolis, MN, April 16, 2010.

Levenson, J.S. (2009).  *Residential proximity and sex offense recidivism*.  National Institute of Justice Crime Mapping Conference. New Orleans, LA. August 20, 2009.

Levenson, J.S. (2009).  *Justice System and Children's Rights (response to plenary speaker)*.  National Adolescent Perpetrator Conference. Tampa, FL. May 18, 2009.

Levenson, J.S. (2008).  *Sex offender registration, notification, and residence restrictions*.  Vermont Legislature. August 29, 2008.

Levenson, J.S. (2008).  *Sex offender residence restrictions*.  National Coalition to End Homelessness Web Conference. Washington, DC. July 10, 2008.

Levenson, J.S. (2008).  *Sex offender residence restrictions*.  California Coalition on Sexual Offending. San Francisco, CA. May 15-16, 2008.

Levenson, J.S. (2008).  *Sex offender policies: The Emperor's new clothes?* Keynote speaker, New Jersey ATSA Chapter, Scotch Plains, NJ, 4/11/08.

D'Amora, D., Klein, A., Levenson, J.S., Lieb, R. (2007).  *Sex offender policies in the new millennium (Plenary Session)*. 26th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, San Diego, CA, 11/2/07.

Levenson, J.S. (2007).  *Sex offender policies: The Emperor's new clothes?* Liberty Health Care Sex Offender Treatment Conference, Indianapolis, IN, 6/15/07.

Levenson, J.S. (2007).  *Sex offender policies: The Emperor's new clothes?* Texas Sex Offender Treatment Board Conference, Austin, TX, 2/18/07.

Levenson, J.S.,  & Palmer, R. (2006).  *Ethical issues in working with sex offenders*.  25th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Chicago, IL, 9/27/06.

Levenson, J.S. (2006).  *Sex offender policies: The Emperor's new clothes?* Tennessee Sex Offender Treatment Board Conference, Nashville, TN, 8/21/06.

Levenson, J.S. (2006).  *Sex offender policies: The Emperor's new clothes?* National Association of Criminal Defense Attorneys Conference, Miami Beach, FL 7/27/06.

Levenson, J.S. (2006).  *Sex offender policies: The Emperor's new clothes?* Keynote speaker, Illinois ATSA statewide conference, Bloomington, IL, 4/28/06.

Levenson, J.S. (2006).  *Sex offender policies: The Emperor's new clothes?* Keynote Speaker, Alliance for Women in Community Corrections, Columbus, OH, 4/27/06.

Levenson, J.S. (2006). Keynote speaker, Sexual Violence Awareness Day Conference, Fort Myers, FL, 4/7/06.

Levenson, J.S. (2006).  *Sex offender policies: The Emperor's new clothes?* Illinois ATSA Board of Directors Meeting, Chicago, IL, 1/17/05.

Levenson, J.S. (2005).  *Sex offender policies: The Emperor's new clothes?*, Florida Sexual Abuse Intervention Network, Tampa, FL, 9/16/05.

Levenson, J.S., (2004).  *Post conviction sex offender polygraph examination: Client perceptions of accuracy and utility*.  Florida Chapter of the Association for the Treatment of Sexual Abusers Annual Meeting, Tampa, FL, 3/6/04.

Levenson, J.S. (2004).  *Working with Families of Juvenile Sex Offenders*, Florida Sexual Abuse Intervention Network, Tampa, FL, 4/30/04.

Hines, B. & Levenson, J.S. (2004). *Assessment and Treatment of Adolescents and Children with Sexual Behavior Problems*, Sponsored by Children's Psychiatric Center, Miami, FL, 3/13/04.

Levenson, J.S. (2003). *Reunification, Supervision, and Visitation of Sex Offenders with Children*. Department of Corrections, Portland, OR, 4/24/03.

Levenson, J.S. (2003). *Working with Families of Juvenile Sex Offenders*, Florida Sexual Abuse Intervention Network, Tampa, FL, 4/3/03.

Levenson, J.S. (2002). *Juvenile Sex Offender Risk Assessment & Treatment Planning*, NASW Ft. Myers Chapter, Ft. Myers, FL, 10/18/02

Levenson, J.S. (2002). *Reunification Following Sexual Abuse*, 21st Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Montreal, Quebec, Canada, 10/2/02.

Levenson, J.S. (2001). *Victim or Victimizer?*, Assessment and Treatment of Adolescents and Children with Sexual Behavior Problems, Ft. Lauderdale, FL, 8/10/01

Levenson, J.S. (2001). *Juvenile Sex Offender Treatment: Child Development, Psychopathology, Family Safety Planning, & Treatment Issues*, Florida Chapter of the Association for the Treatment of Sexual Abusers State Conference, Orlando, FL, 2/10/01

Levenson, J.S. (2000). *Family Safety Planning and Reunification Following Sexual Abuse*, Colorado Chapter of the Association for the Treatment of Sexual Abusers State Conference, Denver, CO, 4/14/00.

Levenson, J.S. (1999). *Connections: Family Safety Planning and Reunification Following Sexual Abuse*, 18th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Orlando, FL, 9/22/99.

Levenson, J.S. (1998). *Connections: Psychoeducational Group Treatment for Nonoffending Parents of Sexually Abused Children and Partners of Sexual Offenders*, Joining Forces: Sexual Abuse Conference, Lakeland, FL, 10/14/98.

Levenson, J.S. (1998). *Family Safety Planning and Reunification Following Sexual Abuse*, Third Annual Florida Sex Offender Treatment Conference, Deerfield Beach, FL, 6/18/98.

Levenson, J.S. (1998). *Family Safety Planning and Reunification Following Sexual Abuse*, DuPage County Probation Department, Wheaton, IL., 5/8/98.

## PEER-REVIEWED  PRESENTATIONS AT PROFESSIONAL CONFERENCES

Levenson, J.S. (2011). A descriptive analysis of individuals on public registries. 30 Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Toronto, CA, 11/3/10.

Levenson, J.S. (2010). *Residential restrictions for sex offenders*. 29th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Phoenix, AZ, 10/21/10.

Levenson, J.S. (2009). *Proximity & sex offense recidivism*. American Society of Criminology, November 4, 2009, Philadelphia, PA.

Levenson, J.S. (2009). *Charting new territory: Mapping trends in sex offender policy*. 28th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Dallas, TX, 9/30/09.

Levenson, J.S. (2008). *Failure to register & sex offense recidivism*. American Society of Criminology, November 12, 2008, St. Louis, MO.

Levenson, J.S., Prescott, D., & D'Amora, D. (2008). *What can we learn from sex offenders? Data from a series of consumer satisfaction surveys*. 27th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Atlanta, GA, 10/24/08.

Levenson, J.S. (2007). *Sex offender residence restrictions*. American Society of Criminology, November 14, 2007, Atlanta, GA.

Levenson, J.S. (2007). *Sex offender policies: The Emperor's new clothes?* Florida Council Against Sexual Violence, June 20, 2007, Daytona Beach, FL.

Levenson, J.S. (2007).  *Sex offender policies: The Emperor's new clothes?* Sexual Abuse Intervention Network, May 16, 2007, Tampa FL.

Levenson, J.S. & Cotter, L.P. (2006).  *The impact of Megan's Law and residence restrictions on sex offender reintegration*, 25th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Chicago, IL, 9/28/06.

Palmer, R., & Levenson, J.S. (2005).  *Ethical issues in working with sex offenders*.  24th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Salt Lake City, UT, 11/18/05.

Levenson, J.S. & Cotter, L.P. (2005).  *The impact of Megan's Law and residence restrictions on sex offender reintegration*, 24th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, New Orleans, LA, 11/3/05.

Levenson, J.S. (2005). *The Impact of Megan's Law on Sex Offender Reintegration*. 9th Annual Conference of the Society for Social Work and Research, Miami, FL. 1/16/05.

Levenson, J.S. (2004).  *Sex Offender Civil Commitment Selection: Preliminary Research Findings*, 23rd Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Albuquerque, NM, 10/29/04.

Levenson, J.S. & Rapa, S. (2003).  *Clinical Supervision of Therapists who Treat Sex Offenders*, 22nd  Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, St. Louis, MO, 10/9/03.

Rapa, S. & Levenson, J.S. (2003).  *Countertransference in the treatment of sexual abusers*, 22nd  Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, St. Louis, MO, 10/9/03.

Levenson, J.S. (2003).  *Engagement, Denial, and Treatment Progress in a Sample of Male Sex Offenders in Group Therapy*, 22nd  Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, St. Louis, MO, 10/9/03.

Macgowan, M.J. & Levenson, J.S. (2003). *Psychometrics of the Group Engagement Measure with Male Sex Offenders*. 7th Annual Conference of the Society for Social Work and Research, Washington, D.C., 1/17/03.

Levenson, J.S. (2002).  *Improving CPS risk assessment in child sexual abuse cases*. 10th Annual Conference of the American Professional Society on the Abuse of Children (APSAC), New Orleans, LA, 5/30/02

Levenson, J.S. (2001).  *The Role of ATSA Members in Child Protection*, 20th Annual Treatment and Research Conference of the Association for the Treatment of Sexual Abusers, San Antonio, TX, 11/9/01.

Levenson, J.S. (2001).  *Social Workers are Mandated Reporters*, NASW statewide conference, Ft. Lauderdale, FL, 6/16/01

Levenson, J.S. (2000).  *Connections: Working with the Nonoffending Parent in Sexual Abuse Cases*, 19th Annual Treatment and Research Conference of the Association for the Treatment of Sexual Abusers, San Diego, CA, 11/3/00.

Levenson, J.S. (2000).  *Psychopathy in Children*,  NASW statewide conference, Ft. Lauderdale, FL, 6/22/00.

Levenson, J.S. (1999).  *Inside the Mind of the Sex Offender*, NASW statewide conference, Ft. Lauderdale, FL, 6/11/99

Levenson, J.S. (1999).  *Family Safety Planning and Reunification Following Child Sexual Abuse*, 7th Annual Conference of the American Professional Society on the Abuse of Children (APSAC), San Antonio, TX., 6/4/99.

Levenson, J.S. (1998).  *Utilizing Group Process as an Intervention Strategy with Sexual Offenders*, 17th Annual Treatment & Research Conference of the Association for the Treatment of Sexual Abusers, Vancouver, British Columbia, 10/16/98.

Levenson, J.S. (1998).  *Bridging the Gap Between Assessment & Case Planning*, 6th Annual Conference of the American Professional Society on the Abuse of Children (APSAC), Chicago, IL., 7/10/98.

Levenson, J.S. (1997).  *Connections:  Working with the Nonoffending Parent in Sexual Abuse Cases*, 16th Annual Treatment and Research Conference of the Association for the Treatment of Sexual Abusers, Arlington, VA, 10/17/97.

Morin, J.W. & Levenson, J.S. (1997).  *Defining Successful Completion:  A Competency Based Treatment Model*, Second Annual Florida Sex Offender Treatment Conference, Tampa, FL, 4/11/97.

Morin, J.W. & Levenson, J.S. (1996).  *Defining Successful Completion:  A Competency Based Treatment Model,* 15th Annual Treatment and Research Conference of the Association for the Treatment of Sexual Abusers, Chicago, IL, 11/15/96.

**Social Work Supervision (1991-present)**
- Field instruction for MSW & BSW students from FIU, FAU, and Barry University
- Clinical supervision for Masters-Level licensure interns as required by Florida Statute 491



# LYNN UNIVERSITY

**3601 North Military Trail**
**Boca Raton, FL 33431-5598**

September 30, 2013

Clerk of the Court
Eastern District of Michigan
Via e-filing by the plaintiffs' counsel

        Re: *John Does #1-5 and Mary Doe v. Rick Snyder and Col. Kriste Etue*
           E.D. Mich. No. 12-cv-11194
           Amendment to Jill S. Levenson's expert report,

To Whom It May Concern:

    I am writing today to ensure that my original expert report, filed with the court on March 15, 2012 on behalf of the plaintiffs, is in full compliance with Federal Rule of Civil Procedure 26(a)(2)(B).

    Rule 26(a)(2)(B)(iv) requires an expert report to contain the witness's qualifications, including a list of all publications authored in the previous 10 years. Given the time that has passed since we filed my report, I have attached my most recent CV to be included as an appendix to my original report.

    In addition, I have attached a statement of compensation for my work on this case as well as a list of cases in which I have recently provided expert testimony. These attachments make my report compliant with the requirements set forth in Rules 26(a)(2)(B)(v) and (vi).

                Sincerely,

                Jill S. Levenson, PhD, LCSW

encl: updated CV; compensation & case list

cc: by e-filing notice to all counsel (w/ encls)