UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE #1-5 and MARY DOE,

    Plaintiffs,

v.                                                    Case No. 12-11194

RICHARD SNYDER and COL. KRISTE ETUE,

    Defendants.
                                                 /

**OPINION AND ORDER RESOLVING OUTSTANDING ISSUES RAISED IN PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR JUDGMENT**

Plaintiffs John Doe #1-5 and Mary Doe filed a nine count First Amended Complaint challenging the constitutionality of the Michigan's Sex Offenders Registration Act ("SORA"), as amended in 2011 and 2013. (Dkt. # 46, Pg. ID 840.) Both parties filed Rule 52 motions for judgment on the stipulated facts and records submitted by the parties. (*See* Dkt. ## 90-95). The court resolved the majority of Plaintiffs' claims in the March 28, 2013 Opinion and Order Granting in Part and Denying in Part Defendants' Amended Motion to Dismiss (Dkt. # 27, Pg. ID 669) and the March 31, 2015 Opinion and Order Resolving Motions for Judgment (Dkt. # 103, Pg. ID 5875). In the latter opinion, the court reserved judgment on two issues raised by Plaintiffs: (1) whether Mich. Comp. Laws § 28.725a(7) is unconstitutional as applied to John Doe #4 and (2) whether it is constitutional for the lifetime registration requirement's incorporation of the requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich.

Comp. Laws § 28.727(1)(i), to be applied retroactively. (Dkt. # 103, Pg. ID 5946.) The court requested additional briefing on both issues, which the parties provided on April 20, 2015. (Dkt. ## 104, 106, 107.) The court held a hearing on the remaining issues on June 11, 2015. For the reasons stated on the record and discussed below, the court finds that (1) Mich. Comp. Laws § 28.725a(7) is unconstitutional as applied to Doe #4 and (2) it is unconstitutional for the lifetime registration requirement's incorporation of the Internet reporting requirement to be applied retroactively.

**I. The Constitutionality of Mich. Comp. Laws § 28.725a(7) as Applied to Mr. Doe #4**

**A. Standard**

The Fourteenth Amendment of the Constitution of the United States provides that no state "shall deprive any person of life, liberty, or property, without due process of law." Const. amend. XIV. Holding an individual criminally liable for failing to comply with a duty imposed by statue, with which it is legally impossible to comply, deprives that person of his due process rights. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[W]e assume that man is free to steer between lawful and unlawful conduct, [and, therefore,] we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."); *United States v. Mise*, 240 F.3d 527, 530 (considering and rejecting a due process impossibility challenge to a statute requiring the defendant to register a pipe bomb on the ground that the defendant did not present evidence that registration was legally impossible); *United States v. Felts*, 674 F.3d 599, 605 (6th Cir. 2012) (choosing not to address a due process impossibility attack on the Sex Offender Registration Notification Act, 42 U.S.C. § 16901 *et seq.*, because "[the defendant] cites no specific

2

inconsistencies between Tennessee law and SORNA that would have rendered it "impossible for [him] to comply with SORNA in Tennessee"). Similarly, a "pure status crime" which does not require any conduct in order to impose punishment but rather penalizes a person for his "mere status" is unconstitutional. *See Powell v. State of Tex.*, 392 U.S. 514, 542 (1968); *Robinson v. State of Cal.*, 370 U.S. 660, 667 (1962) (holding that "a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment").

## B. Discussion

Mich. Comp. Laws § 28.725a(7) provides:

> An individual required to be registered under this act shall maintain either a valid operator's or chauffeur's license issued under the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, or an official state personal identification card issued under 1972 PA 222, MCL 28.291 to 28.300, with the individual's current address.[1] The license or card may be used as proof of domicile or residence under this section. In addition, the officer or authorized employee may require the individual to produce another document bearing his or her name and address, including, but not limited to, voter registration or a utility or other bill. The department may specify other satisfactory proof of domicile or residence.

An individual who fails to comply with the requirement to maintain a state identification card "is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." Mich. Comp. Laws § 28.729(2). Plaintiffs contend that § 28.725a(7) violates the Due Process Clause

---

[1]This opinion uses the term "state identification card" to refer to valid operator's licenses, valid chauffeur's licenses, and official state personal identification cards, collectively.

3

because Doe #4 "is automatically and unpreventably in violation" of SORA inasmuch as "he is homeless [and] cannot update his driver's license to match his registration address (which is 'homeless')." (Dkt. # 96, Pg. ID 5692.) The court agrees.

Based on the record before the court, it appears that it is impossible for a homeless person who does not utilize the services of a homeless shelter, agency, or some other organization, to obtain a state identification card. In fact, the parties stipulated that:

> Since becoming homeless Mr. Doe #4 has been unable to comply with the SORA requirement that he maintain a driver's license or personal identification that matches the address he uses to register for SORA. The Secretary of State will not issue identification with 'homeless' as an address.

(Dkt. # 90, Pg. ID 3939.)

Defendants concede that an applicant must establish proof of residence in order to obtain a state identification card. (Dkt. # 107, Pg. ID 5972.) *See* Mich. Comp. Laws § 28.291(1). The Michigan Secretary of State requires that applicants for a state identification card present at least two documents displaying their name and Michigan residence's address in order to establish proof of Michigan residence. (Dkt. # 107-2.) Nothing in the record suggests that Doe #4 utilizes the services of a homeless shelter, agency, or other organization. He does not have an address, and, accordingly, cannot provide the necessary documentation to obtain a state identification card.

The court refrains from construing § 28.725a(7) to compel homeless persons to utilize the services of a shelter, agency, or other organization. Courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Elonis v. United States*, 135 S. Ct. 2001, 2014-15 (2015) (internal quotation marks omitted).

When construing a statute more narrowly than its plan meaning, courts attempt to do "'the least damage' to the statute" possible. *United States v. Coatoam*, 245 F.3d 553, 58 (6th Cir. 2001). Construing a statutory provision that requires registrants to maintain a state identification card to compel homeless registrants to associate with a shelter, agency, or other organization would do far greater harm to the plain meaning of § 28.725a(7) than finding the identification card requirement inapplicable to homeless persons who are without a valid address. Such a construction would introduce an intrusive burden on homeless registrants that is not reflected in the plain meaning of the statute.[2]

The court, therefore, finds that § 28.725a(7) violates the Due Process Clause as applied to Doe #4 because it is impossible for Doe #4 to comply with the statute.

## II. THE RETROACTIVE APPLICATION OF THE INTERNET REPORTING PROVISION

### A. Standard

The First Amendment, as applied to the states through the Fourteenth Amendment, protects individuals from laws abridging the freedom of their speech. The Supreme Court has expressed that "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock*

---

[2]Furthermore, the record does not establish whether there would be a shelter, agency, or organization available to Doe #4 were he to attempt to utilize such services.

*Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted). The Court further clarified that

> . . . a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. To be sure, this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

*Id.* at 798-800 (internal quotation marks and citations omitted).

The court also recognizes that, in general, "[r]etroactivity is not favored in the law," *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988), and that "a justification sufficient to validate a statute's prospective application under the [Due Process] Clause 'may not suffice' to warrant its retroactive application." *Landsgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

## B. Discussion

In the Opinion and Order Resolving Motions for Judgment, dated March 31, 2015, the court considered whether the 2011 SORA amendments' retroactive extension of Doe #3's, Doe #4's, and Ms. Doe's registration period from twenty-five years to life violated the Due Process Clause of the Fourteenth Amendment. (Dkt. # 103, Pg. ID 5929-40.) The court held that, in general, the retroactive application of SORA's lifetime registration requirement is constitutional; however, the court noted that this finding does

6

not apply to the provisions of SORA which the court found constitutionally infirm. (Dkt. # 103, Pg. ID 5939.) The court also reserved judgment on the constitutionality of the retroactive application of SORA's Internet reporting provision, through its incorporation in the lifetime registration requirement. (*Id.* at 5940.)

The Internet reporting provision requires registrants to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system." Mich. Comp. Laws § 28.727(1)(i). In its March 31, 2015 opinion, the court declared the requirement to report email and instant message addresses that are "routinely used by the individual" unconstitutional and enjoined its enforcement. (Dkt. # 103, Pg. ID 5946.) The court held that the *prospective* application of the rest of the of Internet reporting requirement—absent the "routinely used by the individual" clause—survived intermediate scrutiny and was, therefore, constitutional. In so holding, the court found that Michigan has "a compelling interest in protecting minors from violence and sexual abuse" (Dkt. # 103, Pg. ID 5921) and later noted that Michigan has "a robust interest in protecting the individuals, especially children, from online predators." (*Id.* at 5940.)

The parties concede that Michigan has a significant interest in "investigating and deterring criminal activity" but now dispute whether retroactively requiring certain registrants to comply with the Internet reporting requirement for life, rather than for twenty-five years, is narrowly tailored to achieve that interest. (Dkt. # 106, Pg. ID 5960.)

Plaintiffs contend that "Defendants have offered no reason why 25 years of reporting would be insufficient . . . [nor] explained how lengthening reporting

requirements form 25 years to life does anything to deter crime." (*Id.* 5960-61.) Moreover, they cite to research presented by an expert witness which shows that, "for medium-risk sex offenders, the risk of committing a sex offense drops off over time so that after 10-14 years offense-free in the community, it is below the baseline for non-sex offenders . . . [and] that high-risk sex offenders pose no more risk than [persons arrested for non-sexual offense] after 17 years offense-free in the community. (Dkt. # 90, Pg. ID 3802-03.) In other words, a convicted sex offender who has not re-offended in twenty-five years is less likely to commit a sex offense than someone who was previously arrested for a non-sex offense. (*Id.* at 3803 (graph at ¶ 354).) Plaintiffs also emphasize that the retroactive application of the Internet reporting requirement is overbroad in light of the fact that only approximately 5.5% to 7% of registrants were convicted of Internet or computer-related offenses. (*Id.* at 3874.) Likewise, Plaintiffs note that, while the reporting requirement does not *prohibit* any speech, it appears to have had a substantial chilling effect on registrants' speech—whereas 92% of adult Americans use email, fewer than half of non-incarcerated Michigan registrants report having an email address or other Internet identifier. (*Id.* 3882.)

     It is Defendants' burden to show that the retroactive extension of the Internet reporting requirement from twenty-five years to life is narrowly tailored—meaning Defendants must show that such retroactive extension of the requirement does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. Defendants have failed to carry this burden.

Defendants insist that the retroactive extension of the Internet reporting requirement from twenty-five years to life is narrowly tailored because "[t]he required internet information is available only to law enforcement," "[t]he required information includes only electronic mail and instant message addresses, login names or other identities assigned to the individual," and the court's ruling concerning the "routinely used by the individual" clause further tailors the reporting requirement. (Dkt. # 107, Pg. ID 5976.) Defendants also assert that "[t]he State's significant interest in protecting minors and vulnerable adults from internet predators would be substantially impaired absent this retroative internet registration requirement." (*Id.* at 5977.) Without the retroactive application of the requirement, "investigations could be needlessly delayed and suspects could esacpe detection." (*Id.*)

At the motion hearing on June 11, 2015 and in their Supplemental Brief (Dkt. # 107), Defendants addressed many of the points raised by Plaintiffs. They suggest that the fact that over 93% of registrations were not convicted of a computer or Internet-related crime does not render the reporting requirement overbroad because having a database of Internet identifiers is useful for investigating and deterring offenses not related to computer use. They also attack the study which shows that registrants who have not re-offended in twenty-five years are less likely to commit a sex offense than persons who were arrested for a non-sex offenses on the grounds that the study had a small sample-size, it had all male subjects, the study's risk analysis was suspectible to human error, and its definition of re-offending was limited to reconviction. However, it is not Plaintiffs' burden to demonstrate that the retroactive application of the Internet reporting requirement is not narrowly tailored, and Defendants' bare assertion that

requiring retroactive reporting would aid law enforcement in protecting the public is not enough to survive First Amendment intermediate scrutiny.

It is not hard to imagine how the retroactive application of the reporting requirement could assist law enforcement in protecting the public by making it easier to investigate and deter sex offenses committed using the Internet. Including offenders for life instead of only twenty-five years would add additional identifers to a searchable database which could help in the investigation of a crime in which one of those additional identifiers was used, and, in theory, it could deter a lifetime registrant from committing an offense using one of the identifiers that he (or she) reported to law enforcement.[3] But the fact that extending the reporting requirement might enhance public safety does not, by itself, mean that the extension is narrowly tailored. Indeed, requiring persons arrested for any crime, all American citizens, or all persons present in the United States to register their Internet identifiers could aid law enforcement in investigating and deterring online sex offenses. If every American were required to register his email address, law enforcement would have an even more robust database to search when an Internet alias was used to commit an online offense. Of course, without more in the record, the court would have no basis to find these hypothetical registration requirements, which target individuals with no demonstrated enhanced risk of recidivism, to be narrowly tailored.

---

[3]The court questions whether any rational registrant would opt to use a registered identifier in the commission of a crime rather than creating a new identifier for the purposes of committing the crime. Even so, the database of Internet identifiers could be useful in tracking the conduct of impulsive or irrational registants, and it may permit law enforcement to arrest registrants for violating SORA when there is insufficient evidence of a separate offense.

Even crediting Defendants' rebuttals to Plaintiffs arguments, Defendants have not presented any evidence on which the court could find that requiring lifetime reporting for registrants who have not been convicted of a sex offense in twenty-five years is narrowly tailored to enhancing public safety any more than requiring lifetime reporting for a random sample of 50,000 persons arrested for non-sex offenses. It is true that the reporting requirement is tailored inasmuch as the reported Internet identifiers do not *prohibit* any speech and are not currently available to the public. But, without any evidence presented by Defendants showing that the retroactive application of the reporting requirement increases public safety more than a reporting requirement for 50,000 randomly selected Michiganders who were arrested for non-sex offenses, the court cannot find the retroactive application narrowly tailored—no matter how minimal the burden on the registrants.[4]

Defendants argued during the motion hearing that, in addition to the state's interest in public safety, the retroactive application of the Internet reporting requirement contributes to the state's interest in national uniformity of sex offender registration laws. In its March 31, 2015 Opinion, the court found that the desire to contribute to the national uniformity of sex offender registration laws was a legitimate government

---

[4]The extent of the burden imposed by the reporting requirement is unclear from the record. The notable difference between the percentage of registrants who report Internet identifiers (less than 50%) and the percentage of adult Americans who use email (92%) is susceptible to a number of interpretations, including that there is rampant under-reporting, that the reporting requirement has a significant chilling effect on Internet use, and that some other variable (e.g., time in prison or age) rather than SORA is responsible for the disparity in Internet use. The court need not decide the magnitude of the potential burden imposed on registrants by applying the Internet reporting requirement retroactively; the court merely acknowledges that the retroactive application would impose at least a minimal burden.

11

purpose and that the retroactive application of the lifetime registration requirement helps further the goal of uniformity. (Dkt. # 103, Pg. ID 5938-39.) Defendants have not cited to case law suggesting that contributing to the national uniformity of laws is "a significant governmental interest," *Ward*, 491 U.S. at 791, particularly where an apparent minority of jurisdictions have adopted the purportedly "uniform" law.

As of June 2014, seventeen states, three territories, and sixty-one tribes substantially complied with the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901 *et seq.* (Dkt. # 90, Pg. ID 3776), and retroactivity is one of the factors in determining substantial compliance.[5] (Dkt. # 93-33, Pg. ID 5489.) Defendants have not identified which states, territories, and tribes have applied a lifetime requirement to report Internet identifiers retroactively. Thus, the court is unable to determine the extent to which extending SORA's Internet reporting requirement retroactively would contribute to national uniformity.

Under the circumstances, Defendants have not demonstrated that the desire to conform Michigan sex offender registry with an unknown number of other jurisdictions' registries is a substantial state interest; therefore, this interest cannot justify infringing upon registrants' First Amendment right to free speech by extending the Internet reporting requirement retroactively from twenty-five years to life.

Last, it is worth noting that, while the court held in its March 31, 2015 opinion that the prospective application of § 28.727(1)(i)—absent the "routinely used by the individual" clause—survives intermediate scrutiny, the court's inquiry into its retroactive

---

[5]In order to avoid losing certain federal funding, states were required to comply with SORNA by July 2011. (Dkt. # 90, Pg. ID 3776.)

application is different. Whereas, in the previous opinion, the court considered whether requiring registrants to report their Internet identifiers in general was narrowly tailored to protecting Michigan residents from criminal activity, the question now before the court is whether requiring registrants who have not committed an offense in twenty-five years to continue to register their internet Identifiers is narrowly tailored to the significant interest of preventing crime, while leaving ample alternative channels for communicating information.

As stated above, "a justification sufficient to validate a statute's prospective application under the [Due Process] Clause 'may not suffice' to warrant its retroactive application." *Landsgraf*, 511 U.S. at 166. Such is the case here. The court relied, in part, on *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) and *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010) in concluding that the *prospective* application of § 28.727(1)(i) was narrowly tailored to achieve the goal of aiding law enforcement in preventing and investigating crime. (Dkt. # 103, Pg. ID 5918-29.). The court was able to reach this finding because there is evidence in the record—i.e., the research presented by Plaintiffs' expert witness—showing that the majority of sex offenders are more likely to commit a sex offense than individuals arrested for crimes other than sex offenses. (Dkt. # 90, Pg. ID 3802-03.)

The research presented by Plaintiffs suggests that medium-risk and high-risk sex offenders pose a greater threat of committing sex offenses than individuals arrested for non-sex offenses for at least the first ten years after a convicted sex offender returns to the community, but, as discussed above, these offenders present no greater risk of committing a sex offense by their twenty-fifth year in the community than persons

13

arrested for non-sex offenses. (Dkt. # 90, Pg. ID 3803.) The court found it unnecessary to reduce the length of the Internet reporting requirement, as applied prospectively, in light of the standard set forth by the Supreme Court in *Ward*. In *Ward*, the Court expounded on the constitutional standard for content neutral regulations impacting free speech, explaining, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . , *the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.*" 491 U.S. at 800 (emphasis added).

The record supports the court's conclusion that the prospective application of the Internet reporting provision is not substantially broader than necessary to enhance public safety by deterring registrants from utilizing the Internet in committing future offenses and making investigation of computer-based offenses easier on the grounds that (1) convicted sex offenders pose an enhanced risk of committing sex offenses, (2) SORA does not *prohibit* registrants from engaging in speech on the Internet, and (3) SORA does disclose registrants' Internet identifiers to the public. (Dkt. # 103, Pg. ID 5926.) Meanwhile, Defendants have not carried their burden of showing that extending the reporting requirement from twenty-five years to life is narrowly tailored to contribute to public safety because, as stated above, the record does not support the finding that convicted sex offenders who have not re-offended in twenty-five years pose an enhanced risk of committing sex offenses. The court's inquiries regarding the

prospective and retrospective applications of § 28.727(1)(i) are different, as are its conclusions.

### III. CONCLUSION

IT IS ORDERED that Plaintiffs' Rule 52 Motion for Judgment on the Papers (Dkt. # 96) is GRANTED IN PART and DENIED IN PART, consistent with the court's previous orders.

IT IS FURTHER ORDERED that Defendants' Rule 52 Motion for Judgment on the Papers (Dkt. # 97) is GRANTED IN PART and DENIED IN PART, consistent with the court's previous orders.

IT IS FURTHER ORDERED that Mich. Comp. Laws § 28.725a(7) is declared unconstitutional and its enforcement is enjoined, as applied to John Doe #4.

IT IS FURTHER ORDERED that the retroactive incorporation of the lifetime registration requirement's incorporation of the requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws § 28.727(1)(i), is declared unconstitutional and its enforcement is enjoined.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 3, 2015, by electronic and/or ordinary mail.

    s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

15

16