UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————————————

JOHN DOES #1-5 and MARY DOE,

                      Plaintiffs,

v.

RICK SNYDER, Governor of the State
of Michigan, and COL. KRISTE ETUE,
Director of the Michigan State Police,
in their official capacities,

                      Defendants.

————————————————————————

File No. 2:12-cv-11194

HON. ROBERT H. CLELAND

Mag. David R. Grand

**PLAINTIFFS' PETITION AND BRIEF
FOR ATTORNEYS' FEES AND COSTS**

The plaintiffs, by counsel, petition the Court for attorneys' fees under 42

U.S.C. § 1988, and costs under Fed. R. Civ. P. 54(d)(1) and (2), 28 U.S.C. § 1920,

and 42 U.S.C. § 1988, stating as follows:

   1.  The plaintiffs are the prevailing parties in this action under 42 U.S.C. § 1983

for purposes of attorneys' fees under the Civil Rights Act, 42 U.S.C. § 1988.

   2.  The plaintiffs' petition is supported by the brief below, along with exhibits

setting forth the attorneys' qualifications, the time the attorneys and student attor-

neys spent on the case, and affidavits in support.

Wherefore, the plaintiffs request that their petition for attorneys' fees and costs be granted in full.

Respectfully submitted,

 s/ Miriam Aukerman (P63165)
American Civil Liberties Union
 Fund of Michigan
Attorney for Plaintiffs
1514 Wealthy St. SE, Ste. 242
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

 s/ Paul D. Reingold (P27594)
Michigan Clinical Law Program
Attorney for Plaintiffs
363 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
pdr@umich.edu - (734) 763-4319

Blair Hotz, Jamila Odeh, and
Adrian Vallens
Student Attorneys for Plaintiffs

Dated: March 26, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES #1-5 and MARY DOE,

                          Plaintiffs,

v.

RICK SNYDER, Governor of the State
of Michigan, and COL. KRISTE ETUE,
Director of the Michigan State Police,
in their official capacities,

                          Defendants.

_____

File No. 2:12-cv-11194

HON. ROBERT H. CLELAND

Mag. David R. Grand

**PLAINTIFFS' BRIEF IN SUPPORT OF**
**<u>PETITION FOR ATTORNEYS' FEES AND COSTS</u>**

  Pursuant to Local Rule 7.1, the plaintiffs sought the defendants' concurrence
in this motion but concurrence was denied (though negotiations are ongoing).

# TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

I.    Prevailing Plaintiffs Are Entitled to Attorneys' Fees ........................................1

II.   The Plaintiffs Obtained Excellent Results. ........................................................1

III.  The Plaintiffs Seek Reasonable Fees .................................................................5

    A.  The Plaintiffs Seek Reasonable Rates ............................................................6

       1.  The Rates Sought for the Attorneys Are Reasonable ..................................7

       2.  The Rates Sought for the Student Attorneys Are Reasonable ...................12

    B.  The Time for Which Fees Are Sought Is Reasonable Given the Length
        and Complexity of the Case and the Defendants' Aggressive Defense. ........14

    C.  The Plaintiffs Have Exercised Billing Judgment...........................................20

    D.  Total of Billable Hours and Fees Requested .................................................22

    E.  A Multiplier Is Appropriate ..........................................................................22

IV.  Plaintiffs' Costs Are Compensable ..................................................................25

SUMMARY AND CONCLUSION .......................................................................25

# TABLE OF AUTHORITIES

## Cases

*Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) ...................12

*Bailey v. Pataki*, 2016 WL 3545941 (S.D.N.Y. Dec. 1, 2017)................................30

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2004) ...................... 26, 27, 30

*Barry v. Corrigan*, 79 F. Supp. 3d 712 (E.D. Mich. 2015) ............................. 10, 16

*Barry v. Lyon,* 834 F.3d 706 (6th Cir. 2016) .........................................................10

*Blum v. Stenson,* 465 U.S. 886 (1984) ...............................................................8, 13

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ....................................................7

*Commonwealth of Pennsylvania v. Muniz,* __ Pa. __; 164 A.3d 1189 (Pa. Sup. Ct. 2017) ...............................................................................................................5

*Does #1-4 v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013) ...............................19

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) ...............................21

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015) ...............................21

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) ..................................... 3, 19, 22

*Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004)........................................ 8, 27, 30

*Gilman v. Brown*, No. CIV. S-05-830, 2014 WL 3735401 (E.D. Cal., July 28, 2014) ....................................................................................................................16

*Gonter v. Hunt Valve Co.,* 510 F.3d 610 (6th Cir. 2007) .......................................14

*Greer v. Holt,* 718 F.2d 206 (6th Cir. 1983).........................................................29

*Guam Soc'y of Obstetricians & Gynecologist v. Ada*, 100 F.3d 691 (9th Cir. 1996)........................................................................................................29

*Hamama v. Adducci*, 261 F. Supp. 3d 820 (E.D. Mich. 2017).................................9

*Hescott v. City of Saginaw*, 757 F.3d 518 (6th Cir. 2014)........................................2

*Houle v. Sampson*, 2:09-cv-10504 (E.D. Mich. 2010) ............................................9

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008)....................25

*Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2005) .......................................30

*Iswed v. Caruso*, No. 08-CV-1118, 2013 WL 12093132 (W.D. Mich. Feb. 14, 2013) ...................................................................................................... 15, 17

*Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714 (5th Cir. 1974).............7

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) ....................................27

*Lavin v. Husted*, 764 F.3d 646 (6th Cir. 2014) ........................................................6

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858 (D. Or., July 15, 2014)..................................................................................16

*Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304 (6th Cir. 1988).......................1

*M.C. ex rel E.C. v. Dep't of Educ. Of City of New York*, No. 12- CV-9281, 2013 WL 2403485 (S.D.N.Y. June 4, 2013) ......................................16

*Mikaloff v. Walsh*, 2009 WL 901860 (N.D. Ohio, March 30, 2009)......................29

*Millard v. Rankin,* 265 F. Supp. 3d 1211 (D. Colo. 2017) ........................................5

*Missouri v. Jenkins*, 491 U.S. 274 (1989).................................................................15

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)...................................................................................30

*People v. Dipiazza*, 286 Mich. App. 137 (2009) ........................................................9

*People v. Sulloway*, 316 Mich. App. 174; 891 N.W.2d 255 (2016)..........................4

*People v. Temelkoski*, 905 N.W.2d 593 (Mich. 2018).................................................9

*Poe v. Granholm*, 834 F.Supp.2d 721 (W.D. Mich. 2011).........................................9

*Potter v. Blue Cross Blue Shield of Mich.,* 10 F. Supp. 3d 737 (E.D. Mich. 2014) ................................................................14

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y 1997) ....................................27

*Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) .............................................9

*Schleben v. Carpenters Pension Tr. Fund-Detroit & Vicinity*, No. 13-cv-14464, 2016 U.S. Dist. LEXIS 25907 (E.D. Mich. Mar. 2, 2016) ...........17

*Siggers-El v. Barlow*, 433 F. Supp. 2d 811 (E.D. Mich. 2006)........................ 15, 16

*Smith v. Doe*, 538 U.S. 84 (2003) ...............................................................................5

*Snyder v. John Does #1-5*, 2017 WL 4339925 (U.S. Oct. 2, 2017) ........................24

*Spencer v. Benzie County Prosecutor,* 2017 WL 5493183 (Nov. 14, 2017).............4

*Spencer v. Dept. of State Police,* Court of Claims File No. 16-000274-MZ (Nov. 20, 2017) .......................................................................4

*Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013)...............................7

## Statutes

28 U.S.C. § 1920..........................................................................................................31

42 U.S.C. § 1988........................................................................................... 1, 16, 31

42 U.S.C. § 1988(b) ......................................................................................................1

**Other Authorities**

Carpenter, *A Sign of Hope: Shifting Attitudes on Sex Offense Registration Laws*, 47 Sw. L. Rev. 1 (2017)................................................................23

Feige, *When Junk Science About Sex Offenders Infects the Supreme Court*, New York Times (Sept. 12, 2017) ...............................................23

Goldberg & Zhang, *Our Fellow American, The Registered Sex Offender*, 2017 Cato Sup. Ct. Rev. 49 .......................................................23

H.R. Rep. No. 94-1558 (1976)...........................................................1

Hamilton, *Constitutional Law and the Role of Scientific Evidence: The Transformative Potential of Does v. Snyder*, 58 B.C. L. Rev. E. Supp. 34 (2017).........................................................................23

Liptak, *Did the Supreme Court Base a Ruling on a Myth?*, New York Times (March 6, 2017) ...................................................................23

Montgomery, *Fixing a Non-Existent Problem with an Ineffective Solution: Doe v. Snyder and Michigan's Punitive Sex Offender Registration and Notification Laws*, 51 Akron L. Rev. 537 (2017) .....................................24

Post, *Sex Offender Laws and the Sixth Circuit's Ex Post Facto Ruling*, Washington Post (Sept. 7, 2016) .......................................................23

S. Rep. No. 94-1011 (1974) ...........................................................1

Stern, *Appeals Court Issues Scathing Ruling Against Michigan Sex Offender Penalties*, Slate (Aug. 26, 2016).....................................................23

Thompson & Wachtell, An Empirical Analysis of Supreme Court Certiorari Petition Procedures, 16 GEO. MASON L. REV. 237, 274 (2009) ......................19

U.S. Code. Cong. & Admin. News 1976..................................................1

**Rules**

E.D. Mich. L.R. 83.21..................................................................12

Fed. R. Civ. P. 54(d)(1)..............................................................25

## I.  PREVAILING PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES.

The Civil Rights Attorneys Fees Award Act, 42 U.S.C. § 1988(b), allows "prevailing parties" in an action brought under 42 U.S.C. § 1983 to be awarded reasonable attorneys' fees and costs. The purpose of § 1988 "is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558 p. 1 (1976)).

Under § 1988, prevailing parties "should ordinarily recover an attorney fee." *Id.* (quoting S. Rep. No. 94-1011, p. 4 (1976), U.S. Code. Cong. & Admin. News 1976, p. 5912). Plaintiffs are considered to be prevailing parties if they succeed "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433. Where plaintiffs have succeeded on any important issue in the litigation, and especially where legal rights with broad application are decided, full attorneys' fees are appropriate under 42 U.S.C. § 1988. *See, e.g.*, *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 313 (6th Cir. 1988). There is no dispute that the plaintiffs prevailed here.

## II.  THE PLAINTIFFS OBTAINED EXCELLENT RESULTS.

In deciding whether the fees sought are reasonable, "the most critical factor is the degree of success obtained…. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686,703 (6th Cir. 2016) (citation

omitted). "[T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. "'A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome…. District courts may deny fee awards only for work performed on claims 'that bore no relation to the grant of relief' or were otherwise 'frivolous.'" *Hescott v. City of Saginaw*, 757 F.3d 518, 526 (6th Cir. 2014) (citation omitted).

Here the Court entered a final judgment that included broad declaratory and injunctive relief, effectively giving the plaintiffs everything they had asked for in their complaint. Stipulated Final Judgment on Remand, ECF #153. As the Sixth Circuit explained, SORA "brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often … from their own families." *Does #1-5 v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016). Under SORA, the plaintiffs were subjected – for life – to constant supervision, required to report frequently in person, banned from living, working, or "loitering" within 1,000 feet of a school, restricted as to when they could travel, limited in their rights to free speech, hindered from maintaining normal family relationships, identified publicly and falsely as dangerous, and subjected to a vast array of state-imposed restrictions that encompassed nearly every facet of their lives. As a result of *Does #1-5*, these burdens imposed

2

by SORA have been lifted.[1]

The impact of this decision, furthermore, is not limited to the plaintiffs; it will fundamentally alter Michigan's registry. The legislature is now working to revise the statute to cure its constitutional defects. While the details of that legislation are still to be developed, the baseline for negotiations is that the new law must comport not only with the Sixth Circuit's ex post facto decision but also with this Court's decisions holding that SORA violates other constitutional provisions as well. Weisberg Decl., Exh. W. This Court's decision that the exclusion zones and some reporting requirements are unconstitutionally vague, that other reporting requirements violate the First Amendment, and that SORA must be read to require *mens rea*, may also provide a defense in future state SORA criminal prosecutions.

Michigan courts have already relied on the Sixth Circuit's holding in *Does #1-5. See, e.g.*, *Spencer v. Benzie County Prosecutor*, 2017 WL 5493183 (Nov. 14, 2017) (granting permanent injunction barring the plaintiff's prosecution for violations of the 2006 or 2011 SORA amendments); *Spencer v. Dept. of State Police*, Court of Claims File No. 16-000274-MZ (Nov. 20, 2017) (citing *Does* and granting permanent injunctions to 32 separate plaintiffs, barring retroactive application of 2006 and 2011 SORA amendments) (Exh. CC). In addition, the Michigan Court

---

[1] Doe #5 is no longer subject to SORA at all. Does #1-4 and Mary Doe are no longer subject to most SORA requirements, including SORA's exclusion zones and extensive reporting requirements. They are listed on the non-public registry, and their registration period has been shortened from life to 25 years. ECF #153.

of Appeals followed this Court's 2015 decision in *People v. Sulloway*, 316 Mich. App. 174, 184, 891 N.W.2d 255 (2016) (holding parts of SORA to be unconstitutionally vague).

*Does* is also having a profound impact on SORA litigation nationally. *Does* is the first federal appellate court decision since the Supreme Court decided *Smith v. Doe*, 538 U.S. 84 (2003), to hold that a SORA can be so punitive that it violates the Ex Post Facto Clause. *See* Gustafson, Ellman, and Janus Decls., Exhs. T - V. As Professor Ellman says: "*Does* has changed the understanding of how *Smith* should be read..., [it] has enormous consequences for registry laws throughout the country." Ellman Decl., ¶ 11, Exh. U. *See also* Westlaw (showing 39 cases citing *Does* as of 3/8/18). Since *Does #1-5*, courts around the country have issued strong opinions distinguishing *Smith* and striking down state SORAs (or parts of those laws). *See, e.g.*, *Commonwealth of Pennsylvania v. Muniz,* __ Pa. __; 164 A.3d 1189 (Pa. Sup. Ct. 2017) (holding state SORA violates Ex Post Facto Clause); *Millard v. Rankin,* 265 F. Supp. 3d 1211 (D. Colo. 2017) (holding state SORA violates Ex Post Facto Clause and the 8th Amendment). In sum, the plaintiffs here not only achieved great success for themselves, but also obtained a series of published decisions that will result in a total rewrite of Michigan's SORA, and that will reshape the national debate about registry laws.

### III.  THE PLAINTIFFS SEEK REASONABLE FEES.

Once plaintiffs have prevailed, the Court must determine what is a reasonable fee. Setting a reasonable fee starts with the "lodestar," which is the number of hours reasonably expended multiplied by a reasonable hourly rate for each attorney. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564 (1987). "The trial judge may, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014). In assessing fees, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply do 'rough justice.'… This means that the court can rely on estimates based on its 'overall sense of a suit.'" *Northeast Ohio Coalition,* 831 F.3d at 703.

The Court may consider the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-19 (5th Cir. 1974), and *City of Riverside v. Rivera*, 477 U.S. 561, 567-68 (1986). The factors are:

1. the time and labor involved;
2. the novelty or difficulty of the questions;
3. the skill needed to properly handle the case;
4. other employment precluded by the attorneys' acceptance of the case;
5. the customary fee;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;
8. the results obtained;
9. the experience reputation and ability of the attorneys;
10. the undesirability of the case;

11. the nature and length of the professional relationship with the client; and
12. awards in similar cases.

*Id*. Not all of the factors are relevant here, but those that are relevant support the plaintiffs' petition. The Court may also consider data and affidavits regarding fees and rates. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821-22 (6th Cir. 2013).

### A.   The Plaintiffs Seek Reasonable Rates.

The hourly rate is determined based on the prevailing market rate for lawyers of comparable skill and experience in the same venue.[2] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Courts are to award "current rather than historic hourly rates" because "compensation received several years after the services were rendered … is not equivalent to the same dollar amount received … as the legal services are performed." *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (holding district court properly applied current market rate to adjust for payment delay where litigation had been ongoing for six years). Although many of the *Johnson* factors militate in favor of an award at the upper end of the hourly rate for comparable counsel, the plaintiffs – exercising billing discretion – are requesting hourly rates below the market rate for attorneys of comparable skill and experience.

---

[2] Nonprofit lawyers, law clinic faculty, and student attorneys are entitled to attorneys' fees at market rates. *See Blum v. Stenson,* 465 U.S. 886, 895 (1984).

**1. The Rates Sought for the Attorneys Are Reasonable.**

The plaintiffs request $450/hour for lead counsel Miriam Aukerman's time.

Ms. Aukerman is a nationally-recognized expert on sex offense registry litigation,[3]

and also litigates other high-impact civil liberties cases.[4] She is a 2000 *summa cum*

*laude* graduate of New York University School of Law, and clerked on the U.S.

Second Circuit Court of Appeals for Judge Pierre Leval. She spent the first decade

of her career at Legal Aid of Western Michigan (LAWM), where she specialized in

the civil consequences of criminal convictions. In 2010 she joined the ACLU of

Michigan, where she now serves as a senior staff attorney. *See* Aukerman Decl., ¶¶

1-17, Exh. D.

---

[3] In addition to the instant case, Ms. Aukerman has litigated *People v. Temelkoski*, 905 N.W.2d 593 (Mich. 2018) (registration of youth whose case was dismissed under diversion program violates due process); *Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) (enforcement of Sixth Circuit's decision in *Does v. Snyder*); *Poe v. Granholm*, 834 F.Supp.2d 721 (W.D. Mich. 2011) (holding registrants may access homeless shelters within 1,000 feet of schools); *Houle v. Sampson*, 2:09-cv-10504 (E.D. Mich. 2010) (negotiated settlement modifying Parole Board's prior practice of automatically imposing parole conditions that prohibit parent/child contact, marital relationships, and religious worship for parolees with sex offenses); *People v. Dipiazza*, 286 Mich. App. 137 (2009) (held sex offender registration is unconstitutionally cruel punishment for youth involved in "Romeo-and-Juliet" relationships). She has also trained prosecutors, defense counsel, legal services attorneys, and other lawyers not only in this state, but around the country, on reentry and sex offense issues. *See* Aukerman Declaration, ¶¶ 5, 8, Exh. D.

[4] For example, Ms. Aukerman was recently appointed class counsel in *Hamama v. Adducci*, 261 F. Supp. 3d 820 (E.D. Mich. 2017), a nationwide habeas class action challenging the deportation of 1400 Iraqi nationals.

In 2017, Judge Levy awarded Ms. Aukerman fees at $425 hour as part of a stipulated fee order (totaling $910,908) for work as class counsel in *Barry v. Corrigan,* 79 F. Supp. 3d 712 (E.D. Mich. 2015) (requiring the state to repay food assistance benefits to low-income state residents), *aff'd*, 834 F.3d 706 (6th Cir. 2016).[5] *See* E.D. Mich. No. 5:13-cv-13185, Opinion and Order Granting Joint Motion for Fees & Costs, Exh. BB. The negotiated $425 rate reflected a reduction from the reasonable hourly rates at the time (February 2017). Indeed, in 2017 the 95th percentile rate – which is appropriate given Ms. Aukerman's qualifications – was $475/hour for attorneys with similar years of practice, and the rate in downtown Detroit, where *Barry* was litigated, was $550/hour. *See* 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report, Table 4, p. 4; Table 6, p. 5, (Bar Survey), Exh. X.

The best comparison for setting hourly rates is what attorneys with comparable skills and experience bill in the same market. At Varnum LLP, a lawyer with Ms. Aukerman's skill and experience would be at the upper end of the firm's $445-$490 hourly billing range for a 2000 law graduate. Dewaard Decl., ¶ 8, Exh. R. At Dykema Gossett in Detroit, a lawyer like Ms. Aukerman would be billing at $515/

---

[5] The fee award in *Barry* was for work performed over a four-year period from 2013 to January 2017, in a case where there was no discovery, only one appeal, and no cert petition. By contrast, *Does* has lasted almost seven years and involved extensive discovery, a voluminous record, three appeals, and a cert petition.

hour. Naasko Decl., ¶ 7, Exh. Q. In sum, Ms. Aukerman was uniquely qualified to handle this litigation, and a rate of $450 is reasonable.

Paul Reingold requests $550/hour for serving as senior co-counsel. Mr. Reingold has been practicing law for 40 years. He is a graduate of Amherst College (1973) and Boston University Law School (1978), and he has been teaching at the Michigan Law School for 35 years. He has served as first-chair or co-counsel in a host of Section 1983 cases, including several decided by the U.S. Supreme Court and the *en banc* Sixth Circuit. Mr. Reingold is the Law School's senior clinical faculty member; he has also served as associate dean for the clinics. He was awarded the State Bar's Champion of Justice award in 2009. *See* Reingold Decl., ¶¶ 1-12, Exh. E.

At Varnum his rate would approach the upper end of the firm's $530-$575 hourly range for lawyers with comparable experience. DeWaard Decl., Exh. R. At Dykema he would command a rate of $655/hour. Naasko Decl., ¶ 8, Exh. Q. In 2017, the 95th percentile rate – which is appropriate given Mr. Reingold's qualifications – was $550/hour in downtown Detroit, where this case was litigated. *Bar Survey*, Table 6, Exh. X.

Ms. Aukerman and Mr. Reingold have led the litigation team from its planning phase in 2011 to the present; their time accounts for the lion's share of the work. But over the past six-plus years numerous other attorneys have assisted on

the case. They fall into two groups: senior counsel who provided expert advice on strategy and reviewed major pleadings, and junior lawyers who performed legal research, helped on discovery, prepared drafts of documents, etc.

The rates requested for senior consulting counsel are as follows: Michael J. Steinberg, the ACLU of Michigan Legal Director – $510/hour; Daniel Korobkin, the Deputy Legal Director – $400/hour; William Swor, a long-time Michigan civil rights and criminal defense attorney – $510/hour; and David Cole, the ACLU's National Legal Director – $864/hour. As set out in their declarations, each of these attorneys has superb credentials and levels of experience that are equal to those of the very best lawyers in private practice, and each provided important assistance in this litigation. Decls. of Steinberg, Korobkin, Swor, and Cole, Exhs. F-H. The rates requested for Mr. Steinberg, Mr. Korobkin and Mr. Swor are at or below the range for attorneys with comparable experience at the major Detroit firms. *See* DeWaard, Naasko, and Turner Decls., Exhs. Q-S. The rate for Mr. Cole, who took part only in the Supreme Court litigation, is based on D.C. rates.[6] Cole Decl., Exh. I.

Junior attorneys involved were Sofia Nelson, Marc Allen, Juan Caballero, Kimberly Buddin-Crawford, and Monica Andrade, all of whom were ACLU legal

---

[6] Mr. Cole's rate is based on Washington D.C. rates for attorneys with 20 or more years of experience. *See* Laffey matrix, http://www.laffeymatrix.com/see.html; *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 351 (6th Cir. 2000) (where out-of-town counsel "transacted all professional duties for the plaintiff within the District of Columbia," D.C. rates were appropriate).

fellows. Nelson, Allen, Buddin-Crawford, Caballero, and Andrade Decls., Exhs. J -

N. A $250/hour rate is requested for them, which again is below the market rates

for junior associates. DeWaard, Naasko, and Turner Decls., Exhs. Q - S.

In sum, the rates requested are as follows:

| Name | Graduation Year | Years Experience | Deward Comparison | Naasko Comparison | Proposed Rate |
|------|-----------------|------------------|-------------------|-------------------|---------------|
| Aukerman | 2000 | 18 | $445-490 | $515 | $450 |
| Reingold | 1977 | 41 | $530-575 | $655 | $550 |
| Cole | 1984 | 34 | Laffey matrix | Laffey matrix | $864 |
| Swor | 1972 | 46 | <standard rate | $655 | $510 |
| Steinberg | 1989 | 29 | <standard rate | $625 | $510 |
| Korobkin | 2006 | 11 | <standard rate | $470 | $400 |
| Nelson | 2013 | 5 | <standard rate | $375 | $250 |
| Allen | 2013 | 5 | <standard rate | $375 | $250 |
| Buddin-Crawford | 2014 | 4 | <standard rate | $365 | $250 |
| Caballero | 2016 | 2 | <standard rate | $340 | $250 |
| Andrade[7] | 2017 | 1 | <standard rate | $340 | $250 |

The Supreme Court has recognized that counsel's depth of experience and

the complexity of the case are factors relevant to the fee rate. *Blum*, 465 U.S. at

896. In *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 and n. 6 (6th Cir. 2007), the

Sixth Circuit held that it is within the court's discretion to award fees in the range

of the 95th percentile of the market rates, where those rates are "sufficient to attract

counsel but avoid[] a windfall." *See also Potter v. Blue Cross Blue Shield of Mich.,*

10 F. Supp. 3d 737, 747 (E.D. Mich. 2014) (fees properly awarded at 95th percen-

---

[7] Ms. Andrade's work was performed too late in the case to be considered by the declarants on rates, but her experience is comparable to that of Mr. Caballero.

tile based on counsel's experience and case's complexity). *See* Bar Survey, Tables 4 and 6, Exh. X. Here the rates sought are also appropriate because of the length of the litigation, the novelty and complexity of the issues involved, the excellent results obtained, and the undesirability of the case. *See* Decls., Exhs. Q - T.

### 2. The Rates Sought for the Student Attorneys Are Reasonable.

Numerous law students, both at the ACLU of Michigan and at the Michigan Clinical Law Program, worked on this case.[8] Student attorneys are very cost-effective: they can be 3-4 times less efficient than lead counsel and still save defendants money. Reingold Decl., ¶ 22, Exh. E. Reimbursement for their work is requested at a rate of $150 per hour.[9] *See Jenkins*, 491 U.S. at 285 (holding para-legals and law clerks are to be awarded fees at market rates). Student practice is specifically authorized and encouraged by local rule. *See* E.D. Mich. L.R. 83.21. The purpose of the rule is to ensure "[e]ffective legal service for each person in the Eastern District of Michigan, regardless of that person's ability to pay." *Id*. "Reim-bursement for student time is consistent with the purpose of the rule, which would be impaired if law clinics and legal aid organizations were not reimbursed for

---

[8] The student attorneys who worked on this matter were exceptionally well quali-fied. The U-M students were advanced clinic students who were hand-picked for a second semester of clinical work; most were in their final year at the Michigan Law School. Reingold Decl., ¶ 20, Exh. E. Summer law clerk positions at the ACLU of Michigan are likewise very competitive. Korobkin Decl., ¶ 8, Exh. G.

[9] A $20 rate is requested for one non-legal intern, Ashna Khanna, based on the rate for administrative staff at the ACLU. Aukerman Decl., ¶ 50, Exh. D.

student time. Law clinics and legal aid organizations, like any law firm or legal association, depend on the recovery of attorney's fees to sustain a level of representation that is professionally adequate." *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 821 (E.D. Mich. 2006) (awarding attorney's fees to the Michigan Clinical Law Program). *See also Iswed v. Caruso*, No. 08-CV-1118, 2013 WL 12093132, at *2 (W.D. Mich. Feb. 14, 2013) (recognizing that reimbursement for student attorneys is consistent with the purposes of the Local Rules and 42 U.S.C. § 1988, and awarding the MSU Law School Clinic fees for student work in a § 1983 lawsuit).

In *Barry, supra,* the state agreed to a $125 hourly rate for ACLU student law clerks as part of the negotiated fee settlement. That negotiated rate reflected the fact that federal courts in Michigan and elsewhere[10] regularly awarded fees for student work in amounts equal to the rates at which student time is billed by local law firms when students are working as summer associates, or at the rates in the most recent State Bar Survey. *See, e.g.*, *Siggers-El*, 433 F. Supp. 2d at 821 ("Plaintiff has submitted affidavits from local attorneys stating that the [2006] prevailing billing rates for the work of summer associates and interns is between $100 and

---

[10] Federal courts in other jurisdictions have awarded similar hourly rates for student work. *See, e.g.*, *Gilman v. Brown*, No. CIV. S-05-830, 2014 WL 3735401, at *5 (E.D. Cal., July 28, 2014) (awarding hourly rate of $110 for 2013 and $126 for 2014 for work performed by law students); *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858, at *15 (D. Or., July 15, 2014) (finding $125-per-hour student rate is reasonable); *M.C. ex rel E.C. v. Dep't of Educ. Of City of New York*, No. 12- CV-9281, 2013 WL 2403485 at *7 (S.D.N.Y. June 4, 2013) (same).

$130 per hour."); *Iswed*, 2013 WL 12093132 at *3 ("As for the law students, the

Michigan Bar's 2010 survey found that the median hourly billing rate for attorneys

with less than one year of experience was $150; the 25th percentile rate was $125

per hour."). *Cf. Schleben v. Carpenters Pension Tr. Fund-Detroit & Vicinity*, No.

13-cv-14464, 2016 U.S. Dist. LEXIS 25907, at *28 (E.D. Mich. Mar. 2, 2016)

($125/hour for paralegal work).

The $150 rate requested here is below that billed by private firms. Naasko

Decl., ¶ 14 Exh. Q ($220 summer associate rate); DeWaard Decl., ¶ 7, Exh. R

(requested rate is below paralegal rate). The Bar Survey 2017 average billing rate

for attorneys with less than one year in practice was $197/hour; the 25th percentile

for such attorneys was $150. Bar Survey, Table 4, p. 4, Exh. X. The rate of $150/

hour, based on the 25th percentile, is thus a conservative figure.

### B. The Time for Which Fees Are Sought Is Reasonable Given the Length and Complexity of the Case and the Defendants' Aggressive Defense.

The plaintiffs' success was almost seven years in the making. The case

raised complex and important constitutional issues and was aggressively defended

by the state from start to finish. Most of the work was handled by just two people –

Miriam Aukerman and Paul Reingold – who occasionally sought guidance from

other experienced counsel and were assisted by junior lawyers and law students.

The reasonableness of the time that Ms. Aukerman and Mr. Reingold spent

can be seen by reviewing the major phases of the case, and the state's defense. *See*

14

District Court and Court of Appeals Dockets, Exhs. AA-CC.

Preparations for the case began in the summer of 2011. Pre-filing work in litigation against the state is difficult and time-consuming. It requires factual and legal investigation of potential claims, and analysis of procedural and merits defenses. In addition, the case required the plaintiffs' lawyers to learn about modern social science research and to secure expert reports *before* filing the complaint. Gustafson Decl., ¶ 23, Exh. S; Aukerman Decl., ¶ 34, Exh. D; Reingold Decl., ¶ 33, Exh. E.

In March 2012, after many months of investigation and preparation, the plaintiffs filed a 74-page complaint, ECF #1, accompanied by five expert reports, ECF #1-10 to 14, and a motion to proceed anonymously. ECF #4. The plaintiffs' pled a series of constitutional violations, under the Ex Post Facto Clause, the Due Process Clause, and the First Amendment. They also included a state-law Headlee Amendment claim. Each claim had to be researched carefully before the filing.

In April 2012, the defendants moved to dismiss. ECF #13. After full briefing and oral argument, the Court issued a published opinion granting the motion in part and denying it in part. ECF #27; *Does #1-4 v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013). The parties then engaged in extensive discovery. They took 23 depositions, 16 by the state defendants and seven by the plaintiffs, though one witness was deposed twice. There were six expert witnesses, all of whom prepared reports

15

for the plaintiffs and all of whom were deposed.[11] The parties also served lengthy interrogatories and document requests.

Once discovery was exchanged, counsel needed to review the documents, including voluminous training materials, handbooks, reports, and data maintained by the State Police Sex Offender Registration Unit. The plaintiffs also engaged in some creative fact-gathering. For example, the plaintiffs wanted to show that SORA was so vague that registrants and law enforcement did not know what the law said or how to implement it. Counsel had interns call local law enforcement and prosecutors' offices, asking questions about what registrants must report. The answers they got were all over the map and contradictory – perfectly demonstrating the plaintiffs' point. Granzotto and Poxson Decls., ECF #91-8, #91-9.

As is typical, the parties engaged in extensive negotiations about document production. Gustafson Decl., ¶¶ 28, 30, Exh. T; Aukerman Decl., ¶ 35, Exh. D. There was also a motion to compel discovery, ECF #47, which eventually settled after a status conference and further negotiations. ECF #48. The plaintiffs briefed the defendants' motion in limine, which sought to exclude reports by several of the plaintiffs' witnesses, and which the Court denied. ECF #87, #88, #89, #102.

While discovery was ongoing, the plaintiffs filed an intervenor complaint,

---

[11] Counsel's time working with experts was well spent: the Sixth Circuit cited and even reproduced some of their reports in its opinion. *Does #1-5*, 834 F.3d at 702 (reproducing map), 704-705 (noting ineffectiveness of SORA laws).

ECF #35, adding John Doe #5. After Michigan amended SORA, the plaintiffs filed an amended complaint. ECF #46. In February 2014, following some 10 months of discovery, the parties filed cross motions for summary judgment. ECF #58, #79. The plaintiffs' motion was supported by lengthy separate statements of facts, seven expert reports, and over 950 pages of exhibits. ECF #58-1 to #72-8.

In April 2014, at the Court's suggestion, the parties withdrew their Rule 56 motions and re-filed them under Rule 52 (bench trial on the papers). Stipulated Order, ECF #85. The Court ordered the parties to produce a single factual record, with a single set of supporting exhibits, and to identify factual disputes. *Id.* The joint statement of facts created by the parties was 260 pages long. ECF #90. The language of each of its 1,105 paragraphs had to be negotiated – a time-consuming process – and an in-person conference with the Court was required to resolve disputes. Aukerman Decl., ¶ 35, Exh. D; Gustasfon Decl., ¶ 28, Exh. T. The joint statement of facts was accompanied by 128 exhibits, totaling more than 1,600 pages. ECF #90-1 to #94-18. In addition, because the legal standards under Rule 52 are different than under Rule 56, the parties had to rewrite and resubmit their briefs. Rule 52 Briefs, ECF #96, #97, #99, and #100.

In March 2015, this Court issued a published opinion granting in part and denying part both parties' motions for judgment. ECF #103; *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015). The Court then ordered additional briefing

17

on several remaining issues. ECF #104. After one more oral argument, in September 2015 the Court issued yet another published opinion. ECF #118; *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015). The parties then negotiated a stipulated final judgment, which was entered in October 2015. ECF #122.

In the meantime, in April 2015, the defendants filed an interlocutory appeal, ECF #108, as to the injunctive relief granted by the Court in March. After entry of the final judgment in the fall of 2015, both sides appealed. ECF #123, #125. The three appeals – the interlocutory appeal and the two final-judgment appeals – were briefed separately in the Sixth Circuit over two briefing cycles, followed by two oral arguments. Six amicus briefs were filed in the Court of Appeals.[12]

In August 2016, the Sixth Circuit held that SORA's 2006 and 2011 amendments amount to punishment and thus violate the Ex Post Facto Clause as applied retroactively. *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). The Court also recognized the significance of the plaintiffs' other claims, noting:

> [T]his case involves far more than an Ex Post Facto challenge. And as the district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance. …We therefore reverse the district court's decision that SORA is not an Ex Post Facto law and remand for entry of judgment consistent with this opinion. [*Id*. at 706.]

---

[12] Counsel's work soliciting *amici* was also well spent: the Sixth Circuit panel relied upon and paraphrased amicus brief text in its published decision. *See e.g., Does #1-5,* 834 F.3d at 699-701.

In September 2016, the defendants sought panel rehearing, 6th Cir. No. 15-1536, ECF #53, which the court denied. *Id*., ECF #57-1. The defendants then moved to stay the mandate. *Id.,* ECF #58. The Sixth Circuit initially granted the stay, but then vacated it after the plaintiffs moved for reconsideration based on a procedural error, and filed a substantive response to the motion for stay. Order, ECF #60-1; Order, ECF #64-1; Pls' Motion, ECF #62; Pls' Response in Opp. to Stay, ECF #63. The Sixth Circuit then reversed itself and denied the defendants' motion to stay the mandate. Order, ECF #66-1. The defendants sought review of the stay denial in the U.S. Supreme Court, but Justice Kagan denied the stay. Denial Letter (11/15/16).

In December 2016, the defendants petitioned for certiorari. In February 2017, the plaintiffs filed their brief in opposition. In May 2017, instead of granting or denying the petition, the Supreme Court entered an order calling for the views of the Solicitor General (CVSG). A CVSG order takes the votes of four Justices (the same number required for a cert grant), and increases the odds of a cert grant by 46 times. *See* Thompson & Wachtell, An Empirical Analysis of Supreme Court Certiorari Petition Procedures, 16 *Geo. Mason L. Rev*. 237, 274 (2009). The Supreme Court follows the recommendation of the U.S. Solicitor General (SG) close to eighty percent of the time, *id.* at 276, which meant that the plaintiffs' advocacy with the SG's Office was of paramount importance. Working in conjunction with

19

the outgoing and incoming ACLU national legal directors (Steven Shapiro and David Cole), plaintiffs' counsel drafted and refined a submission to the SG about why the United States should oppose certiorari. As is standard in CVSG cases, *see* Bagenstos Decl., Exh. DD, counsel went to Washington to meet with the SG/DOJ lawyers. In July 2017, the SG filed a brief recommending that the Supreme Court deny cert, and in October 2017, the Court followed that recommendation. *Snyder v. John Does #1-5*, 2017 WL 4339925, at *1 (U.S. Oct. 2, 2017).

This Court then reopened the case. ECF #142. After a status conference and briefs on the parties' competing proposed judgments (ECF # 146, #147, #151), the Court entered a stipulated final judgment on January 26, 2018, holding that the retroactive imposition of SORA's post-2005 amendments violates the Ex Post Facto Clause, and granting the plaintiffs the permanent injunctive relief they had requested in their complaint. Stipulated Final Judgment, ECF #153.

In sum, *Does #1-5* called for serious lawyering, and both sides litigated the case with the resources appropriate for what was at stake: a global challenge to a state law that affected tens of thousands of people, and that might well result in a decision that would influence SORA cases and SORA laws nationally.

## C. The Plaintiffs Have Exercised Billing Judgment.

"The party applying for an award of fees should exercise billing judgment with respect to the hours worked." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d

531, 552 (6th Cir. 2008). The plaintiffs have done so by excluding altogether the time spent by certain attorneys, law clerks, and interns, by excluding potentially duplicative work, by cutting hours of student attorneys, and by billing conservatively across the board. Aukerman & Reingold Decls., Exhs. D and E.

No compensation is sought for Steven Shapiro, who spent about 12 hours on the Supreme Court appeal. Aukerman Decl., ¶ 41, Exh. D. No compensation is sought for hundreds of hours spent by Joe Granzotto and Tim Poxson, ACLU clerks who collected data on SORA enforcement and wrote two reports that were significant enough that the defendants deposed the authors and filed an unsuccessful motion in limine to exclude their findings. ECF #87, #88, #89, #102; Aukerman Decl., ¶ 42, Exh. D. Finally, 115.35 hours have been deducted from the time of William Swor, Sofia Nelson, Marc Allen, and Juan Caballero to account for duplication of effort. *Id.* at ¶ 40. No compensation is sought for time spent by ACLU communications or legislative staff who consulted on the litigation. *Id.* ¶ 45; Weisberg Decl., ¶ 19, Exh. W.

In addition, all time spent by law students has been cut by at least one third. Aukerman Decl., ¶ 43, Exh. D; Reingold Decl., ¶ 24, Exh. E. Furthermore, Mr. Reingold recorded no time for hours spent meeting with students in his capacity as a teacher on the case, for example when bringing the student-attorneys up to speed. Reingold Decl., ¶¶ 24-30, Exh. E. Accordingly, the requested time is reasonable.

21

**D.   Total of Billable Hours and Fees Requested**

As detailed in the Summary of Charges, Exh. A, the lodestar calculation results in attorneys' fees of $1,780,474.63 for work through March 22, 2018. This figure is based on 2,124.45 hours for Ms. Aukerman, 1,060.90 hours for Mr. Reingold, 153.7 hours for senior consulting counsel, 267.7 hours for junior lawyers, and 625.73 hours for student attorneys and clerks.

**E.   A Multiplier Is Appropriate.**

A fee enhancement or multiplier is appropriate when warranted by exceptional success, the undesirable or controversial nature of the case, the risk involved, or other *Johnson* factors. In *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2004), the Sixth Circuit upheld a 1.75 multiplier in a case where the jury found that a transgender police officer was discriminated against for failing to conform to gender stereotypes. Although the multiplier "nearly doubled the award of attorneys," the adjustment was appropriate in light of the novelty and difficulty of the legal question, "the immense skill requisite to conducting this case properly," the highly controversial nature of the litigation which "few lawyers locally or nationally" would take, and the extraordinary result achieved. *Id.* at 735, 746. In *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004), a desegregation case, the Sixth Circuit held that the district court erred by failing to consider a multiplier in light of the results obtained and the risk involved: "[t]he legal principles advanced by

the Geier Plaintiffs were pathbreaking and of great social import," the case had

"national significance", and the "risk of not prevailing in this litigation" was

substantial. *Id.* at 793, 795-96. *See also Jordan v. City of Cleveland*, 464 F.3d 584,

605 (6th Cir. 2006) (district court erred in finding case was neither novel nor com-

plex, and therefore erred in denying fee multiplier); *Roberts v. Texaco, Inc.*, 979 F.

Supp. 185, 197 (S.D.N.Y 1997) (awarding 5.5 multiplier where case resulted in

significant public policy change).

The same factors apply here with greater force. As in *Barnes* and *Geier*, the

plaintiffs' success was exceptional, resulting in a decision that will require a re-

write of Michigan's SORA and transform the lives of tens of thousands of people.

Weisberg Decl., ¶ 14, Exh. W. The legal issues were novel and complex, the skill

needed to litigate them was high, and the results broke new ground. The national

significance of the case was reflected in the top-tier media attention *Does #1-5*

received.[13] Legal scholars, too, have recognized *Does*' importance.[14]

---

[13] *See, e.g.*, Feige, *When Junk Science About Sex Offenders Infects the Supreme Court*, New York Times (Sept. 12, 2017); Liptak, *Did the Supreme Court Base a Ruling on a Myth?*, New York Times (March 6, 2017); Stern, *Appeals Court Issues Scathing Ruling Against Michigan Sex Offender Penalties*, Slate (Aug. 26, 2016); Post, *Sex Offender Laws and the Sixth Circuit's Ex Post Facto Ruling*, Washington Post (Sept. 7, 2016).

[14] *See, e.g.*, Hamilton, *Constitutional Law and the Role of Scientific Evidence: The Transformative Potential of Does v. Snyder*, 58 B.C. L. Rev. E. Supp. 34 (2017); Carpenter, *A Sign of Hope: Shifting Attitudes on Sex Offense Registration Laws*, 47 Sw. L. Rev. 1 (2017); Goldberg & Zhang, *Our Fellow American, The Registered Sex Offender*, 2017 Cato Sup. Ct. Rev. 49; Montgomery, *Fixing a Non-Existent*

A multiplier is also appropriate here because, as in *Barnes*, this case was both controversial and undesirable. *See Mikaloff v. Walsh*, 2009 WL 901860 (N.D. Ohio Mar. 30, 2009) (awarding multiplier because "[l]itigating constitutional issues on behalf of sex offenders is a difficult task that is undesirable"); *Guam Soc'y of Obstetricians & Gynecologist v. Ada*, 100 F.3d 691 (9th Cir. 1996) (2.0 multiplier justified due to controversial nature of case). Indeed, few cases are as "undesirable" as those involving sex offenders. *See Greer v. Holt,* 718 F.2d 206, 208 (6th Cir. 1983) (district court should consider "undesirability" of case when awarding fees where attorneys "accepted an unpopular case involving a client whose status in the community could hardly have been worse, whose only witnesses were convicted felons and who was indigent" ); *Bailey v. Pataki*, 2016 WL 3545941, at *6 (S.D.N.Y. Dec. 1, 2017) (awarding up to $600/hour in sex offender civil commitment case as it was "a highly undesirable case"). Gustafson Decl., ¶¶ 48-49, Exh. T (noting unwillingness of private firms to handle SORA cases and stigma associated with such work); Steinberg Decl., ¶¶ 17-19, Exh. F (same); Ellman Decl., ¶ 8; Exh. T (noting attorneys' fears that such cases will harm their careers); Turner Decl., Exh. S, ¶ 21 (same); Aukerman Decl., ¶¶ 22, 30, Exh. D;

---

*Problem with an Ineffective Solution: Doe v. Snyder and Michigan's Punitive Sex Offender Registration and Notification Laws*, 51 Akron L. Rev. 537 (2017).

Reingold Decl., ¶ 38, Exh. E (noting public revulsion toward their work).[15]

Accordingly, based on *Barnes,* 401 F.3d at 746-47 – which was a damages action affecting a single plaintiff – the plaintiffs here request a multiplier of 1.75. *Does* will not only result in major changes to Michigan's registry, but may transform sex offender registration jurisprudence nationally. The multiplier increases the total fee request from $ 1,780,474.63 to $ 3,115,830.61.

## IV.   PLAINTIFFS' COSTS AND NONTAXABLE EXPENSES ARE COMPENSABLE.

As detailed in the Summaries of Costs, Exhs. B and C, the plaintiffs seek costs of $ 23,755.47 under Fed. R. Civ. P. 54(d)(1) and (2), 28 U.S.C. § 1920, and 42 U.S.C. § 1988.

## SUMMARY AND CONCLUSION

For the above reasons, the plaintiffs request an award of attorneys' fees and costs of $3,139,586.08 for work performed through March 22, 2018.

Respectfully submitted,

 s/ Miriam J. Aukerman (P63165)       s/ Paul D. Reingold (P27594)
American Civil Liberties Union        Michigan Clinical Law Program
 Fund of Michigan                     Attorney for Plaintiffs
Attorney for Plaintiffs               **Dated: March 26, 2018**

---

[15] A multiplier is also appropriate where a case is both "exceptional" and "risky." *Geier*, 372 F.3d at 794 (upward adjustment for risk in "exceptional" case); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (upward adjustment can be made where there is "a real risk-of-not-prevailing"). At the outset of *Does*, the plaintiffs' counsel were told – including by opposing counsel – that the case had no merit. Aukerman Decl, ¶ 19, Exh. D; Reingold Decl., ¶ 37, Exh. E.

**<u>Certificate of Service</u>**

The above plaintiffs' petition and brief for attorneys' fees and costs, with supporting documents and declarations, were filed today using the Court's ECF system, which will provide same-day email service to all counsel of record.

<u> s/ Paul D. Reingold</u>
Attorney for Plaintiff